ROACH *v.* UNDERWOOD *et al.*

(*Knoxville*, September Term, 1950.)

Opinion filed June 16, 1951.

JOHN J. DUNCAN and WILBUR W. PIPER, both of Knoxville, for complainant.

NATHAN ORRIS HALE, MYRON RAY ELY, and EVERETT M. SMITH, all of Knoxville, for defendants.

Mr. Justice Prewitt delivered the opinion of the Court.

The question presented here is whether an administrator can recover for money mistakenly paid to the widow of his decedent. This was a suit brought by the administrator as such and individually against Mary Alice Smith Underwood and her stepchildren. The widow filed a demurrer to the bill, which was sustained.

It appears that the decedent, Boyd Smith, Sr., was killed when he fell at the Costen shops of the Southern Railway in Knoxville. The complainant, Jack Roach, was a friend of the family and was requested to act as administrator of the estate. The complainant made a settlement of $10,000 with the railroad company under the Federal Employers' Liability Act, 45 U. S. C. A. Sec. 51 et seq., and under an order of the county court distributed said money, or at least part, to said widow, approximately $5,750, said distribution to her being under said Federal Employers' Liability Act. Later on, suit was brought by the minor children, who were stepchildren of said widow, and this Court held in *In re Smith's Estate,*

231 S. W. (2d) page 569, that the distribution should have been made according to the laws of distribution in Tennessee and that the widow was only entitled to a child's part. It thus appears that the widow was paid approximately $3,750 more than she was legally entitled to and this suit is to recover said sum. The Chancellor was of the opinion that this was a mistake of law and not of fact and there could be no recovery under our decisions. It should be borne in mind that the administrator counseled with the county judge and the county court clerk and that the above mentioned order was entered in the case.

The defendant relies upon the case of *Leach* v. *Cowan*, 125 Tenn. 182, 140 S. W. 1070. In that case, the will of Robert Redd Swepson of Knox County was involved and after the executors had made final settlement, some of the beneficiaries sued to set aside the same, making many charges of mismanagement and the propriety of a payment of $12,000 to E. H. Saunders was questioned. It was charged that the payment of $12,000 to Saunders was wrongful and that recovery should be awarded the dissatisfied complainants. Swepson had given Saunders a check for $12,000 upon his marriage in 1901 and he was holding the check at the death of the testator on March 23, 1902. When the will was opened, it was known that this check was outstanding and the circumstances surrounding its being given to Saunders. There was a discussion between the executors and their attorney and the latter advised the executors that the debt should be paid. The debt was paid by the executors and they took credit for such payment in their final settlement. This Court said that under the recognition of such claim and its final payment, the complaining parties "will stand in the attitude of one who makes a voluntary payment of money, knowing

all the facts, and subsequently sues to recover it. In cases of that kind, the general rule is there can be no recovery, even if there was no legal liability to pay in the first instance. As stated, we do not deem it necessary to review the merits of the controversy, or the question of legal liability, all of which were passed upon by the parties at the time of the settlement and payment. Under such state of facts, the account should not be reopened for examination of this claim." [125 Tenn. 182, 140 S. W. 1077.]

Further, in *Leach* v. *Cowan,* supra, the Court said: "We are not to be understood as holding that there is absolutely no case in which money or property paid or conveyed under mistake of law can be recovered. There may be such a recovery, even though the transaction was made under a mistake of law; but it must be under such circumstances as the court can see that it would be unconscionable for the party who obtained the advantage in such transaction or settlement to retain that advantage, and e converso, although there was a clear mistake of law, yet if the party benefiting by the transaction may retain the advantage in good conscience, neither a court of law nor equity will give relief to the complaining party. *Warren* v. *Williamson,* 8 Baxt. 427, 431; *Northrop['s Ex'rs]* v. *Graves,* 19 Conn. 548, 50 Am. Dec. 264; *Baker* v. *Massey,* 50 Iowa 399, 403, citing with approval Kerr on Fraud and Mistake, p. 398. See, also, 1 Story's Eq. Jur. (13th Ed.) Sec. 111. In addition to *Warren* v. *Williamson,* supra, we have several cases in our reports which illustrate the principle: *Drew* v. *Clarke, Cooke,* 374, 380, 5 Am. Dec. 698; *Trigg* v. *Read,* 5 Humph. 529, 532-535, 42 Am. Dec. 447; *Sparks* v. *White,* 7 Humph. 86, 90; *Farnsworth* v. *Dinsmore,* 2 Swan 38, 42; *King* v. *Doolittle,* 1 Head

[77] 78, 84-88; *Dalton* v. *Wolfe,* 11 Heisk. 498, 502; *Spurlock* v. *Brown,* 91 Tenn. 241, 261, 18 S. W. 868.''

In *Northrop* v. *Graves,* 19 Conn. at page 553, it was said:

''In deciding this case, we have not supposed it necessary to examine very critically the opinions of jurists, which have been advanced upon the general question, how far mistakes of law may be relieved against in equity; nor what is the precise nature of the distinction made by courts between the effect of mistakes of law and mistakes of fact upon the rights and responsibilities of parties. The questions raised on this motion seem to us to be within limits more confined.   And yet we shall have occasion to advert to some of the cases on this subject, and to some of the maxims which are supposed to apply to it; such as Volenti non fit injuria—Ignorantia legis non excusat; and to the maxim often in requisition, and generally false in reality, that every man is bound, and therefore 'presumed, to know the law.'   These and all other general doctrines and aphorisms, when properly applied to facts and in furtherance of justice, should be carefully regarded; but the danger is, that they are often pressed into the service of injustice, by a misapplication of their true meaning.   It is better to yield to the force of truth and conscience, than to any reverence for maxims.

''In the present case, we establish no new principle, nor depart from any well settled doctrine of the common law. We do not decide, that money paid by a mere mistake in point of law, can be recovered back; (a) as if it has been paid by an infant, by a feme covert, or by a person after the statute of limitations has barred an action, or when any other merely legal defense existed against a claim for the money so paid, and which might be honestly re-

tained. But we mean distinctly to assert, that, when money is paid by one, under a mistake of his rights and his duty, and which he was under no legal or moral obligation to pay, and which the recipient has no right in good conscience to retain, it may be recovered back, in an action of indebitatur assumpsit, whether such mistake be one of fact or of law; and this we insist, may be done, both upon the principle of Christian morals and the common law. And such only was the doctrine of the charge to the jury, in the present case. In such a case as we have stated, there can be no reasonable presumption that a gratuity is intended; nor is the maxim Volenti non fit injuria, at all invaded. The mind no more assents to the payment made under a mistake of the law, than if made under a mistake of the facts; the delusion is the same in both cases; in both alike, the mind is influenced by false motives.

"Nor are we here deciding a case where the plaintiffs claim to recover under a mere pretense that they were ignorant of the law, so much and so strangely feared by Judge Story (1 Sto. Eq. 123, § 111); but a case in which the jury has found, that such mistake existed in truth, not in pretense."

In *Moritz v. Horsman,* 305 Mich. 627, at page 631, 9 N. W. (2d) 868, 870, 147 A. L. R. 117, the court said: "Two questions are presented, which we will discuss seriatim: First, May plaintiffs recover the amounts received by defendant through a mistake of law on the theory of unjust enrichment where there is no fraud nor any inequitable conduct by defendant in inducing the mistake? It is well nigh impossible to reconcile the many cases allowing or denying the recovery caused through a mistake of law. The rule denying recovery is based historically on the maxim that everyone is presumed to know the law.

In the enforcement of the criminal law, this maxim expresses a necessary rule of conduct. Were we to adopt the principle so often used in civil cases that the presumption disappears when there is evidence to the contrary, there is ample testimony to show that none of the parties nor their former attorneys knew the law with respect to the right of an adopted son to inherit from an uncle who died intestate. The more acceptable theory for denying recovery on account of mistake of law is that proof of mistake of law, unlike proof of mistake of fact, is not objectively ascertainable because it must be found in the mind of the party making payment. The subjective evidence of what was in a person's mind is not considered a satisfactory means of determining the real motive for payment. See note, 45 Harvard Law Rev., 336. In this State, the rule has been laid down that relief will be granted where there has been a mistake as to antecedent and existing private legal rights or where the mistake has been induced by defendant's inequitable conduct. See *Barr* v. *Payne,* 298 Mich. 85, 298 N. W. 460; *Renard* v. *Clink,* 91 Mich. 1, 51 N. W. 692, 30 Am. St. Rep. 458. In recent years textwriters and a few of the courts have come to the conclusion that relief for mistake of law should be given as readily as that for mistake of fact. [5] Williston, Contracts, Rev. Ed. 1937, Sec. 1581 [p. 4415]; Restatement of Law of Restitution, p. 179; *Peterson* v. *First National Bank* [*of Ceylon*], 162 Minn. 369, 203 N. W. 53, 42 A. L. R. 1185; *Reggio* v. *Warren,* 207 Mass. 525, 93 N. E. 805, 32 L. R. A., N. S. 340, 20 Ann. Cas. 1244. In the recent case of *Barr* v. *Payne* [supra], although we denied recovery because of certain other facts in the case, we quoted with approval from *Renard* v. *Clink,* supra, which held that where a person is 'ignorant or

mistaken with respect to his own antecedent and existing private legal rights, interests, or estate, and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or estates, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact.' "

The present case presents one of unjust enrichment and it appears to us that under the facts of the case, it would be unconscionable to permit this stepmother to retain more than $3,750 to which she is not entitled. It appears clearly from the record that the administrator discussed this matter of distribution with the county judge and the county court clerk; that it had been recognized by leading members of the bar that the distribution should be made under the Federal statute, and an order went down in the county court ordering and authorizing the administrator Roach to pay this money to the widow. We think it entirely inequitable and unjust for this defendant to retain this money to which, under the decisions of this Court, she is not entitled.

It results that the decree of the Chancellor will be reversed and the cause remanded to the Chancery Court of Knox County.

All concur.