IN THE COURT OF APPEALS OF TENNESSEE

FILED

November 18, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| BRENDA PRATT, | ) | C/A NO. 03A01-9701-CV-00024 |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| | ) | APPEAL AS OF RIGHT FROM THE |
| v. | ) | KNOX COUNTY CIRCUIT COURT |
| | ) | |
| | ) | |
| | ) | |
| SMART CORPORATION, | ) | |
| | ) | HONORABLE HAROLD WIMBERLY, |
| Defendant-Appellee. | ) | JUDGE |

For Appellant                          For Appellee

DONALD K. VOWELL                       DAN D. RHEA
ROBERT R. CARL II                      Arnett, Draper & Hagood
Vowell & Carl                          Knoxville, Tennessee
Knoxville, Tennessee

JAMES H. HICKMAN III
Knoxville, Tennessee

THOMAS A. SNAPP
Ayres & Parkey
Knoxville, Tennessee

O P I N I O N

VACATED AND REMANDED                                Susano, J.

The plaintiff, Brenda Pratt ("Pratt"), filed suit to recover a portion of the payment made by her to the defendant, Smart Corporation ("Smart"), for copies of her medical records. The trial court granted Smart's motion for summary judgment, concluding that the relevant statute does not permit a "recovery for this plaintiff against this defendant." Pratt appealed, raising several issues which in essence present the following questions for our review:

> 1.  Does the record contain evidence from which a jury could conclude that a charge by a hospital's agent, i.e., Smart, of $28.58 for copies of four pages of medical records was in excess of "the reasonable costs of copying and mailing the patient's records," according to the Medical Records Act of 1974, T.C.A. § 68-11-304(a)(2)(A), thus rendering the transaction voidable?
>
> 2.  Does the record contain evidence from which a jury could conclude that Pratt's payment of Smart's invoice constitutes a voidable contract of adhesion?

Smart, on the other hand, frames the issue before us as follows:

> May a personal injury claimant who has voluntarily paid the invoice of a hospital record copying service for copies of her hospital chart later sue the copying service for a partial refund of her payment on the ground that the payment violated the hospital's statutory right to recoup "reasonable costs of copying and mailing"?

## I.  *Facts*

The events that precipitated this litigation began when Pratt was injured in an automobile accident. She received

2

treatment for her injuries at Fort Sanders Hospital ("the hospital") in Knoxville. Wishing to pursue a claim against the driver of the other vehicle, Pratt subsequently requested, through her attorney, copies of her hospital records. The hospital referred the request to Smart, a "copy company" that it had retained to handle written requests for copies. Smart furnished copies of the four-page medical record to Pratt's attorney, along with an invoice for $28.58. Pratt's attorney then paid the invoice.

On June 16, 1995, Pratt filed, as the representative plaintiff[1], a class action complaint against Smart, pursuant to the provisions of the Medical Records Act of 1974, T.C.A. § 68-11-301, *et seq*. ("the Act"). Smart subsequently moved for summary judgment. The trial court declined to certify the class pending resolution of Smart's motion for summary judgment. The trial court ultimately granted summary judgment in favor of Smart, stating that

> there is no factual dispute about anything
> happening in this case. And it is further
> the opinion [of the court] that the statute
> in question which is, as I said, the basis of
> the plaintiff's claim, does not allow
> recovery for this plaintiff against this
> defendant.

The trial court did not otherwise state its rationale for granting summary judgment.

---

[1] In addition to Pratt, Travis Maxson was originally named as a representative plaintiff. However, an order of voluntary dismissal was entered as to him on February 1, 1996.

## II. *Standard of Review*

We measure the propriety of the trial court's grant of summary judgment against the standard of Rule 56.04, Tenn.R.Civ.P., which provides that summary judgment is appropriate where

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

When reviewing a grant of summary judgment, an appellate court must decide anew if judgment in summary fashion is appropriate. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991); *Gonzalez v. Alman Constr. Co.*, 857 S.W.2d 42, 44-45 (Tenn.App. 1993). Since this determination involves a question of law, there is no presumption of correctness as to the trial court's judgment. *Id.*

## III. *The Parties' Contentions*

Pratt contends that there is evidence from which a jury could conclude that Smart violated the Act by charging $28.58 for copies of four pages of hospital records. The Act provides, in pertinent part, that

5

> ...a hospital shall furnish to a patient or a patient's authorized representative such part or parts of such patient's hospital records without unreasonable delay upon request in writing by the patient or such representative.
>
> The party requesting the patient's records shall be responsible to the hospital for the reasonable costs of copying and mailing the patient's records.

T.C.A. § 68-11-304(a)(1), (a)(2)(A). The Act provides that a willful violation of its terms constitutes a Class C misdemeanor. T.C.A. § 68-11-311(a). It also limits an offending party's civil liability to "actual damages... for willful or reckless or wanton" violations. T.C.A. § 68-11-311(b).

Pratt argues that the Act was intended to protect patients from incurring excessive charges in obtaining copies of their medical records. She contends that Smart falls within the ambit of the Act and that there is evidence from which a jury could conclude that Smart willfully, intentionally, or wantonly violated its provisions in the following ways: by charging her a grossly excessive, unreasonable amount; by using such excessive charges to "subsidize" free copies provided to doctors and hospitals; and by abusing its "monopoly power" over her medical records.

Pratt contends that Smart's violation of the Act renders her attorney's payment of the invoice a voidable transaction, in accordance with the doctrine of **Newton v. Cox**, 878 S.W.2d 105 (Tenn. 1994). In **Newton**, the Supreme Court found that a 50% contingency fee agreement between an attorney and

6

client in a medical malpractice case was in violation of T.C.A. § 29-26-120, which sets the maximum contingency fee arrangement in such cases at one-third. The Court found that the contract in question violated the public policy embodied in the statute, and that as a result, the contract was voidable by the client. The Court stated as follows:

> The prevailing view which has also been applied in Tennessee is that contracts are voidable and not void when they violate statutes enacted for the protection of the public interests or for the protection of the class of persons of which the party seeking to avoid the contract is a member.

*Newton*, 878 S.W.2d at 108 (citations omitted). In the instant case, Pratt argues that the Act incorporates a public policy of protecting medical patients from excessive charges for copies of their records, and that the legislative history of the Act supports this conclusion. Pratt contends that Smart's actions constitute a violation of the Act and that the subject transaction therefore is voidable under the principle set forth in *Newton*.

As a second theory of recovery, Pratt argues that the record contains evidence from which a jury could conclude that her attorney's payment of Smart's invoice constitutes a voidable contract of adhesion.

Smart, on the other hand, advances a variety of theories to support the trial court's grant of summary judgment in its favor. As previously indicated, the trial court did not

give a detailed explanation for its decision that "the statute in question...does not allow recovery for this plaintiff against this defendant." We will not attempt to discern the reasons for the trial court's decision but instead will review the record *de novo* without a presumption of correctness, **Gonzales**, 857 S.W.2d at 44, to determine if summary judgment for Smart is appropriate.

Smart's primary defense to Pratt's claim, and its principal argument for sustaining the trial court's decision, is based upon the voluntary payment rule. That doctrine provides that where one makes a voluntary payment with knowledge of all relevant facts, and then sues to recover that payment, there generally can be no recovery, even if there was no legal liability to pay in the first place. **Roach v. Underwood**, 241 S.W.2d 498, 499 (Tenn. 1951). In accordance with this principle, Smart contends that Pratt is barred from recovery, due to the fact that her attorney voluntarily paid the invoice with knowledge of all relevant facts.

Smart relies upon the case of **Cotton v. Med-Cor Health Information Solutions, Inc.**, 472 S.E.2d 92, 221 Ga.App. 609 (1996), a decision of the Georgia Court of Appeals. In that case, the court held that the plaintiffs -- former hospital patients who alleged that they had been overcharged for copies of their medical records -- were barred from recovery, due to their voluntary payment of the invoices for such copies, regardless of the fact that the charges were in violation of a statute, which is similar to the one in the instant case. **Id**. at 96. Smart

8

argues that the same reasoning is applicable to the case now before us.

In addition, Smart offers various arguments regarding the scope and purpose of the Act. Specifically, it contends that the Act does not authorize a lawsuit of this kind or provide a cause of action against an independent copying service. Pratt then insists that the Act's "reasonable costs" provision imposes a duty upon requestors of medical records, rather than upon hospitals, which Smart maintains are the intended beneficiaries of that provision. Smart also contends that any resort to the Act's legislative history is unwarranted, since an ordinary construction of the statute shows that the Act is an "access" statute, benefitting patients who require access to their records. According to Smart, Pratt was not in the class of persons protected by the Act, since she had already obtained access to her records at the time she filed suit. Smart further argues that the Act merely provides a recipient of copies with a defense to unreasonable charges, and that such defense may be waived, e.g., under the voluntary payment rule. In addition, Smart contends that since the Act fails to set forth any maximum charge for copies of medical records, the only standard by which such charges are measured is that of reasonableness; thus, according to Smart, the definition of what constitutes a "reasonable" cost is left entirely to the parties to a given transaction: if an invoice is rendered and paid, the parties to the transaction have agreed that the cost is reasonable, regardless of the amount.

9

As further support for the trial court's decision, Smart argues that the charge of $28.58 was not unreasonable. It maintains that shifting copying costs away from health care providers, at the expense of individual patients, is not unreasonable. As an additional theory, Smart argues that the parties were in *pari delicto*, thus precluding either party from seeking relief on the basis of any illegality in the contract. Finally, Smart contends that the subject transaction cannot be considered a contract of adhesion, since Pratt's attorney paid the invoice after his receipt of the copies.

In response to Smart's contentions, Pratt submits the following arguments: that the jury could conclude that the payment of the invoice by Pratt's attorney was not voluntary, given Smart's monopoly over her hospital records; that the Act does provide a private cause of action to remedy violations of its terms; that the Act's failure to establish a maximum amount for copy charges is irrelevant, since the paramount question is whether the contract violates the public policy embodied in the Act; that the Act speaks in terms of reasonable *costs*, rather than charges, and a jury could conclude that $28.58 exceeded the reasonable costs of copying and mailing Pratt's records; that an agent may not accomplish for its principal an act which the principal is forbidden to accomplish itself, and that therefore Smart is liable despite the Act's failure to specifically address independent copying companies; and finally, that Pratt was not in *pari delicto* with Smart.

IV. *Application of the Voluntary Payment Rule*

10

We shall first address Smart's primary contention --
that Pratt's claim is barred by virtue of her attorney's
voluntary payment of the invoice.  Our review of the record and
the relevant case law persuades us that the voluntary payment
rule is not applicable to bar this action.

We recognize that Smart's position is in accord with
the Georgia case of *Cotton v. Med-Cor Health Information
Solutions, Inc.*, 472 S.E.2d 92, 221 Ga.App. 609 (1996).  That
decision is based upon a specific Georgia statute[2] that sets
forth that state's version of the voluntary payment rule.  In
Tennessee, however, the voluntary payment rule finds its genesis
in the common law.  *See, e.g., Roach v. Underwood*, 241 S.W.2d 498
(Tenn. 1951).  Other authority in this jurisdiction indicates
that this common law doctrine is not universally applicable to
all transactions.  Specifically, the case of *Newton v. Cox*, 878
S.W.2d 105 (Tenn. 1994), illustrates that the voluntary payment
rule does not come into play in situations involving a
transaction that violates public policy.  In that decision, the
Supreme Court held that a medical malpractice client could
recover an excessive fee that he had already remitted but which
was in derogation of the public policy behind a specific statute.
*Id*.  *Newton* thus recognizes that, where public policy has been
established by a legislative enactment, a transaction that is
violative of that policy is subject to inquiry even though it may
be fully consummated.  *See Id*.  In other words, the State has an
interest in transactions that involve violations of statutorily-

---

[2]O.C.G.A. § 13-1-13.

11

defined public policy, and, generally speaking, in such situations, the voluntary payment rule will not be applicable. Relying on **Newton** and its analysis, we find that the voluntary payment rule presents no impediment to Pratt's cause of action, and thus does not provide an adequate basis for sustaining the trial court's grant of summary judgment in favor of Smart.[3]

## V. *Analysis of Smart's Other Arguments*

We turn now to Smart's other justifications for the trial court's grant of summary judgment. Initially, we disagree with Smart to the extent that it argues that the Act does not authorize a cause of action such as the one in this case. The Act clearly contemplates private actions to remedy violations of its terms, as evidenced by its provision for the recovery of "actual damages in a civil action for willful or reckless or wanton" violations. *See* T.C.A. § 68-11-311.

Secondly, we disagree with Smart's contention that by its terms, the Act does not apply to independent copying services. It is true that the Act does not specifically mention such entities; nevertheless, it is clear in this case that Smart acted as the hospital's authorized agent, and, as such, could not perform acts which the hospital was forbidden by law to perform itself. Furthermore, in the **Cotton** case, upon which Smart relies, the Georgia Court of Appeals specifically held that a statute substantially similar to the Act was applicable to

---

[3]Given this conclusion, we find it unnecessary to address Pratt's argument that her attorney's payment of Smart's invoice was not "voluntary."

12

independent copying services.  *Cotton*, 472 S.E.2d at 95.  The
court in *Cotton* stated that the legislature's objective of
ensuring that patients have access to medical records at a
reasonable cost

> would be completely defeated through a
> construction of the Act that would allow
> patients to be charged more than the
> reasonable copying and mailing costs if the
> providers hire others to perform the task of
> supplying the records.

*Id*.  We agree with this reasoning, and we therefore find that the
Act applies to independent entities that are retained to provide
copying services for hospitals.

As set forth earlier in this opinion, Smart presents
several arguments pertaining to the proper construction and
application of the Act.  We agree with Smart that, in the absence
of any ambiguity, the Act need only be enforced as written,
without reference to its legislative history.  *See In re
Conservatorship of Clayton*, 914 S.W.2d 84, 90 (Tenn.App. 1995).
We take issue, however, with several aspects of Smart's analysis
of the Act and its application to the facts before us.  We
disagree that the Act's "reasonable costs" provision was intended
to benefit only the hospital by imposing a duty of payment upon a
requestor of medical records.  On the contrary, that provision
was clearly intended to protect a requestor of records from
excessive charges.  We also disagree with Smart's contention that
the Act only confers upon a patient a defense to unreasonable
charges, and that such defense can be waived by a voluntary

payment of the amount charged.  As stated earlier, the Act

benefits the patient by providing the remedy of actual damages,

and the voluntary payment rule will not be implicated where a

transaction is in violation of its terms.

By the same token, we disagree with Smart's position

that the Act's failure to establish a definite maximum charge

allows the parties to define "reasonable" costs in any way that

they choose.  An excessive amount, although tacitly agreed to by

the parties, will nevertheless violate the provisions of, and

policy behind, the Act.  We also find no merit in the argument

that because she had already received copies of her medical

records at the time she filed suit, Pratt was not in the class of

persons protected by the Act, i.e., individuals seeking *access* to

their medical records.  We agree that the Act serves to provide

patients with access to their records; however, as previously

discussed, the Act also is intended to protect such individuals

from excessive charges.  This latter protection is available

whether or not the records have been received.  Pratt thus falls

squarely within the protective ambit of the Act.  Likewise, the

fact that it was Pratt's attorney, rather than Pratt herself, who

received the records and paid the invoice presents no obstacle to

Pratt's claim, since her attorney clearly acted on her behalf in

obtaining the records.[4]

We also find Smart's theory that the parties were in

*pari delicto* to be without merit.  This is not a situation in

---

[4]The attorney would not be entitled to the records in the absence of a written authorization from Pratt.  Thus, Smart knew that it was dealing with an agent for a disclosed principal.  This was a transaction between Pratt and Smart.

14

which both parties to a transaction were involved in improper conduct. Neither Pratt nor her attorney were involved in setting the price of the copies, and the mere fact that her attorney had previously engaged in similar transactions with Smart is insufficient to establish such a defense.

Finally, Smart argues that the charge of $28.58 for copying and mailing Pratt's medical records was reasonable. We believe that this represents a disputed question of fact that is properly left for the trier of fact.

## VI. *Conclusion*

Finding no basis for the trial court's grant of summary judgment in this case, we conclude that the judgment now before us is erroneous. Given this determination, we do not find it necessary to address the question of whether the subject transaction constitutes a voidable contract of adhesion.

The judgment of the trial court is hereby vacated. Costs on appeal are assessed to the appellee. This case is remanded to the trial court for such further proceedings as are necessary, consistent with this opinion.

_____
Charles D. Susano, Jr., J.

15

CONCUR:

_____
Houston M. Goddard, P.J.


_____
William H. Inman, Sr.J.