THIRD DIVISION
November 10, 2008

No. 1-07-2723

| | | |
|---|---|---|
| WALTER SOLON and CYNTHIA ZALETEL, on Behalf of Themselves and a Class of Others Similarly Situated, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 04-CH-7119 |
| MIDWEST MEDICAL RECORDS ASSOCIATION, INC., | ) ) ) | Honorable |
| Defendant-Appellant. | ) ) | James F. Henry, Judge Presiding. |

JUSTICE THEIS delivered the opinion of the court:

Plaintiffs Walter Solon and Cynthia Zaletel, on behalf of themselves and a class of others similarly situated, brought this action against defendant Midwest Medical Records Association (MMRA) seeking, *inter alia*, damages incurred as a result of defendant's allegedly deceptive and illegal practice of overcharging patients for requested copies of medical records. Defendant moved to strike that portion of the complaint under section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2004)). The trial court denied defendant's motion and certified

1-07-2723

a question for review pursuant to Supreme Court Rule 308. 155 Ill. 2d R. 308. Defendant

sought review of that question, which we answer in the negative, holding that it is not *per se*

reasonable to charge a flat $20 handling fee under sections 8-2001 and 8-2003 of the Code. 735

ILCS 5/8-2001, 8-2003 (West 2004).

BACKGROUND

Few facts of the underlying case are necessary to answer the certified question before us.

According to the complaint, defendant is a service company that receives and fulfills requests

from patients for copies of their medical records on behalf of health care facilities and

practitioners (collectively, health care providers). Defendant assigns its staff to work on-site at

health care providers' offices to receive medical records requests, locate and copy the requested

records, and send the records to the patient along with a bill for services. The staff also is

responsible for maintaining records of all requests and other administrative matters.

Plaintiffs allege that defendant does not charge health care providers for these services.

Rather, defendant performs this service for health care providers in exchange for the exclusive

right to provide medical records to patients for a fee. Defendant and the health care providers

negotiate the price per page charged to patients. Defendant then bills and collects the fees

directly from patients. In addition to the per-page fee for providing copies of records, defendant

also charges patients a flat $20 handling fee, which defendant refers to as a "process fee."

Plaintiffs contend that defendant's billing practices are fraudulent and violate state law.

They brought a four-count complaint alleging a breach of contract in count I; a violation of

sections 8-2001 and 8-2003 of the Code (735 ILCS 5/8-2001, 8-2003 (West 2004)) in count II; a

violation of section 2 of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS

1-07-2723

505/2 (West 2004)) in count III; and a violation of section 2 of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2 (West 2004)) in count IV.

With respect to count II, plaintiffs specifically allege that the plain language of sections 8-2001 and 8-2003 of the Code only permits defendant to charge for the lesser of the "reasonable expense of production, Illinois' statutory price limit for copies applicable to the type of copies [defendant] furnished, or a fair price for the copies." Therefore, they argue, the flat $20 handling fee is improper. In response, defendant filed a motion to strike count II. It argued, *inter alia*, that plaintiffs misconstrued sections 8-2001 and 8-2003 and, therefore, failed to allege a cause of action under those statutes. The circuit court denied defendant's motion.

Defendant then moved pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)) to certify the following question for review by this court:

> "Is it reasonable *per se* for a provider of medical record copies under
>
> [sections 8-2001 and 8-2003 of the Code] to charge the full amount of the $20
>
> process fee, or is the provider limited to a lesser charge if the evidence shows that
>
> the lesser charge is all that is reasonable?"

Initially, we denied defendant's petition. However, the supreme court subsequently issued a supervisory order directing this court to answer the certified question.

ANALYSIS

We apply a *de novo* standard of review to the legal question presented in an interlocutory appeal brought pursuant to Supreme Court Rule 308(a). Anthony v. City of Chicago, 382 Ill. App. 3d 983, 987, 888 N.E.2d 721, 725 (2008). Our review is strictly limited to the certified question presented. Anthony, 382 Ill. App. 3d at 987, 888 N.E.2d at 725. We do not render an

3

1-07-2723

opinion on the propriety of any underlying orders of the circuit court. Anthony, 382 Ill. App. 3d at 987, 888 N.E.2d at 725.

Initially, we note that the certified question presents a case of first impression. Thus, we turn to the familiar rules of statutory construction to guide our analysis. Our primary objective in construing a statute is to ascertain and give effect to the intent of the legislature. Alvarez v. Pappas, 229 Ill. 2d 217, 228, 890 N.E.2d 434, 441 (2008). All other rules of statutory construction are subordinate to this principle. Alvarez, 229 Ill. 2d at 228, 890 N.E.2d at 441. The best evidence of legislative intent is the language of the statute itself, which must be given its plain and ordinary meaning. Cinkus v. Village of Stickney Municipal Officers Electoral Board, 228 Ill. 2d 200, 216, 886 N.E.2d 1011, 1021 (2008). The statute must be read as a whole and no words should be interpreted so as to be rendered superfluous or meaningless. In re J.W., 204 Ill. 2d 50, 62-63, 787 N.E.2d 747, 755 (2003), citing Collins v. Board of Trustees of the Firemen's Annuity Benefit & Fund, 155 Ill. 2d 103, 110, 610 N.E.2d 1250, 1255 (1993). Nor may we read into the statute any exceptions, limitations, or conditions that were not expressed by the legislature. In re J.W., 204 Ill. 2d at 62, 787 N.E.2d at 755.

At the time plaintiffs filed their complaint, sections 8-2001 and 8-2003 of the Code[1] provided:

---

[1] For the purposes of this appeal, the relevant language of section 8-2003 is identical to that of section 8-2001, with the former section applicable to "practitioners," including physicians' offices, and the latter section applicable to "health care facilities," including hospitals. 735 ILCS 5/8-2001, 8-2003 (West 2004).

4

"Every [health care provider] shall, upon the request of any patient ***,
*** permit copies of [a patient's medical] records to be made by him *** or his
*** physician ***. A request for copies of the records shall be in writing and
shall be delivered to the administrator or manager of such [health care provider].
The [health care provider] shall be reimbursed by the person requesting copies of
records at the time of such copying for all reasonable expenses, including the
costs of independent copy service companies, incurred by the health care facility
in connection with such copying not to exceed a $20 handling charge for
processing the request for copies ***." 735 ILCS 5/8-2001 (West 2004).

In addition, the patient must reimburse health care providers for the cost of the copies at a
maximum per-page rate that varies with the number of pages copied, as well as any shipping
costs. 735 ILCS 5/8-2001, 8-2003 (West 2004).

Plaintiffs argue that aside from the per-page cost of the copies, the plain language of the
statute only permits health care providers to seek reimbursement for "reasonable expenses"
incurred in connection with copying the records and that amount may not exceed $20. Defendant
argues that it is reasonable *per se* for health care providers, through defendant's services,[2] to

---

[2] We note that "health care facilities" and "practitioners" are the subjects of the
statutes. 735 ILCS 5/8-2001, 8-2003 (West 2004). However, as we are limited to
answering only the certified question before us (Anthony, 382 Ill. App. 3d at 987, 888
N.E.2d at 725), we render no opinion on defendant's accountability under the statutes as
a function of its relationship with health care providers where, as here, defendant's

charge patients a $20 flat fee to process the request because it is within the maximum amount allowed to be charged under the statute.

We agree with plaintiffs. In giving effect to the plain and ordinary meaning of each word of the statute, its meaning is clear and unambiguous. To "reimburse" means "to pay back (an equivalent for something taken, lost, or expended) to someone." Webster's Third New International Dictionary 1914 (1981). The statute also directs patients to reimburse the amount of expenses "incurred," which connotes a quantifiable cost that has actually accrued to the health care provider as a result of processing the records request.[3] Webster's Third New International Dictionary 1146 (1981) (to "incur" means "to become liable or subject to"). Thus, the legislature intended for patients to repay health care providers for the actual costs they incurred in processing the records request, rather than pay a flat fee in all circumstances, regardless of the costs incurred. Defendant's construction of the statute, which advocates for a flat fee, renders that language

---

employees operate on-site at the offices of health care providers. But see Clay v. Little Company of Mary Hospital, 277 Ill. App. 3d 175, 179, 660 N.E.2d 123, 126 (1995) ("a patient may be billed for the photocopies, regardless of whether a hospital or a photocopy shop charges them").

[3] Again, in light of our restricted review on interlocutory appeal (Anthony, 382 Ill. App. 3d at 987, 888 N.E.2d at 725), we offer no opinion on what constitutes an "expense" under the statute. Plaintiffs in this case do not argue that defendant should not profit from its business enterprise and, in fact, concede that defendant may make a reasonable profit.

meaningless, in contravention of the principles of statutory construction. In re J.W., 204 Ill. 2d at 63, 787 N.E.2d at 755.

Additionally, the statute states that the amount to be recovered by health care providers is "not to exceed" $20, which imposes a maximum amount of recoverable expenses rather than a flat fee. Thus, the legislature acknowledged that the actual cost of processing a records request could vary with the complexity of the request. For example, it stands to reason that the fewer records a patient requests, the less time defendant's employees may spend processing the request. In such circumstances, it would be unreasonable to charge the maximum amount of recovery to process a simple request.

Defendant urges us to adopt the reasoning in a case recently decided by the Texas Court of Appeals. In In re Metro ROI, Inc., 203 S.W.3d 400, 406 (Tex. App. 2006), the Texas court construed two statutes that bear some resemblance to sections 8-2001 and 8-2003 of the Code. The court concluded that a fee for medical records retrieval is reasonable so long as it does not exceed the $30 maximum fee allowed under that statute. Metro ROI, Inc., 203 S.W.3d at 406. Specifically, it held that by specifying the maximum amount of fees recoverable under the statute, "the Legislature has clearly indicated what constitutes an unreasonable fee." Metro ROI, Inc., 203 S.W.3d at 406. However, it did not address the reasonableness of a health care provider's reimbursement for expenses that were not incurred. Under Metro ROI, Inc., a health care provider could reap a windfall by collecting $30 while having incurred far less in actual expenses. There is no support for that interpretation in the language of our statutes, and in our view, that charge would be unreasonable. Thus, we are not persuaded by the rationale in Metro ROI, Inc. and reject defendant's argument.

Defendant also argues that in construing the plain language of a statute, this court need not be confined to the literal meaning of the statute, but may consider the spirit and purpose of the law as well. *In re* Madison H., 215 Ill. 2d 364, 373, 830 N.E.2d 498, 504 (2005). Indeed, during oral argument, defendant suggested that we "fudge" the plain language of the statute to expand its meaning. According to defendant, the legislature intended for this statute to bring predictability and stability to health care costs, citing a legislative floor debate in support of that interpretation. However, unless the meaning of the statute is ambiguous, we may not look beyond the statutory language to statements regarding the purpose of the law, the evils it was intended to remedy, or the legislative history of the statute to aid in our determination of legislative intent. Cinkus, 228 Ill. 2d at 217, 886 N.E.2d at 1022. In its brief, defendant attempts to argue, in the alternative, that the language of the statute is ambiguous. Nevertheless, as we have discussed, the meaning of the statute is clear from the plain language itself and we will not look to extrinsic sources to aid us in our interpretation.

Moreover, the case cited by defendant does not support defendant's contention. In Madison H., the court did not resort to using extrinsic aids, such as legislative history, to assist in construing the statute at issue. Rather, the court construed the statute at issue together with section 1-2 of the Juvenile Court Act of 1987 (705 ILCS 405/1-2(1) (West 2002)), which set forth the purpose and policy of that act. Madison H., 215 Ill. 2d at 373, 830 N.E.2d at 504, citing 705 ILCS 405/1-2 (West 2002). In doing so, the court adhered to the well-settled rule that a statute must be construed in its entirety, keeping in mind the purpose of the statute as set forth in a coordinate statute. MD Electrical Contractors, Inc. v. Abrams, 228 Ill. 2d 281, 287-90, 888 N.E.2d 54, 58-59 (2008) (construing the purpose statement in section 5 of the Home Repair and

Remodeling Act (815 ILCS 513/5 (West 2006)) together with the section of the statute at issue). In this case, there is no similar statute setting forth the purpose of sections 8-2001 and 8-2003, and thus, we reject defendant's argument.

Finally, defendant argues that our construction of sections 8-2001 and 8-2003 would result in absurd, inconvenient, and unjust consequences because it would "leave thousands of [health care providers] at the mercy of an 'amorphous "reasonableness" test' " that is subject to the "unchecked discretion" of the circuit court. Defendant argues that only an expert commission or panel would be equipped to determine whether a process fee is reasonable.

We have every confidence that the circuit court is capable of determining the reasonableness of a health care provider's processing costs based on evidence presented by the parties, as it does in myriad other respects. See, *e.g.*, In re Marriage of Baumgartner, 384 Ill. App. 3d 39, 46, 890 N.E.2d 1256, 1273 (2008) (courts determine whether expenses are reasonable and necessary for the production of income in marital support matters); Wildman, Harrold, Allen & Dixon v. Gaylord, 317 Ill. App. 3d 590, 597, 740 N.E.2d 501, 508 (2000) (the reasonableness of attorney fees in a breach of contract action is to be determined by the trier of fact, whether by a judge in a bench trial or a jury); Boender v. Chicago North Clubhouse Ass'n, 240 Ill. App. 3d 622, 628-29, 608 N.E.2d 207, 212 (1992) (where secured party purchases collateral for less than fair market value, court must determine whether it was commercially reasonable); Hunter Mfg., Inc. v. Hines, 76 Ill. App. 3d 664, 666, 395 N.E.2d 186, 187 (1979) (under section 2-305 of the Uniform Commercial Code (now 810 ILCS 5/2-305 (West 2004)), where no contract price term is stated, court may infer a reasonable price).

1-07-2723

Accordingly, for the foregoing reasons, we answer the certified question in the negative. We cannot say that it is *per se* reasonable to charge a $20 flat fee for processing costs under sections 8-2001 and 8-2003 of the Code, as defendant advocates. The statutes require patients to reimburse health care providers for reasonable expenses incurred in processing records requests up to $20. With that said, charging a $20 process fee is not *per se* unreasonable. If a health care provider incurs $20 in reasonable expenses to process a records request, and can justify those expenses, it should be reimbursed for those expenses.

Certified question answered.

MURPHY, P.J., concurs.

GREIMAN, J., dissents.

10

JUSTICE GREIMAN, dissenting:

I respectfully dissent from the majority.

"In giving effect to the statutory intent, the court should consider, in addition to the statutory language, the reason for the law, the problems to be remedied, and the objects and purposes sought." General Motors Corp. v. State of Illinois Motor Vehicle Review Board, 224 Ill. 2d 1, 13 (2007). Moreover, when interpreting a statute, we must presume that the legislature did not intend to produce absurd, inconvenient or unjust consequences as a result of the law. Brucker v. Mercola, 227 Ill. 2d 502, 514 (2007).

I conclude that the language of the statute dictates that a handling fee of $20 or below is per se reasonable.[4] The intent of the legislature is clear in that it wanted to expressly define the allowable charges for copies requested by presumably thousands of patients a year.

My construction is supported by the "reason for the law, the problems to be remedied, and the objects and purposes sought" (General Motors Corp., 224 Ill. 2d at 13), which is apparent from the House and Senate transcripts discussing the statutory amendment. In particular, Senator Cullerton introduced the amended bill as follows:

"This bill, which was amended today, reflects a compromise, the issue being how much money patients and clients of professionals can be charged to get their own records back. And as a result of our negotiations ***, we were able to get the Trial Lawyers, the Medical Society, the Hospital Association and the representatives of the companies that do copy records to agree to this procedure, which applies not only, as I said, to hospital

_____

[4] In dicta, the Third District noted that the specified handling charge was reasonable. Ramirez v. Smart Corp., 371 Ill. App. 3d 797, 804 n.1 (2007).

11

records, but also attorneys' records. And it basically sets up a sliding scale of copying charges and an initial fee that you have to pay, a handling charge of [$20]. And as I said, everybody has agreed to it." 92d Ill. Gen. Assem., Senate Proceedings, April 5, 2001, at 226-27 (statements of Senator Cullerton).

Representative Turner further stated:

"The genesis of this Bill actually was not from the Trial Lawyers Association nor was it from the ISBA. It came from what I saw going on in my law practice where I would, from time to time on behalf of clients, request medical records. On several occasions I would get one page for $30, or two pages for $35, or perhaps three or four pages for $50. It became *** abundantly clear that we needed to try to address this situation through legislation that would put some cap on what the charges would be for medical records. We included attorneys in that so that attorney records going to clients would have a cap. And the purpose of this is not to assist lawyers, it's not to assist doctors. It's simply to assist patients and clients so that they can get copies of their own records at a reasonable cost. This is a Bill that has been compromised. I think it does address, in part, the concerns that caused me to raise the issue in the first place." 92d Ill. Gen. Assem., House Proceedings, May 8, 2001, at 47-48 (statements of Representative Turner).

Representative Turner confirmed that the intent of the $20 handling fee was to serve as an "order fee" or a "deposit fee" at the time the records were requested. 92d Ill. Gen. Assem., House Proceedings, May 8, 2001, at 46. Accordingly, the legislature intended the $20 handling fee to be a one-time charge for obtaining records that was a *per se* reasonable method to avoid excessive and variable fees.

I recognize the majority's argument that, because its language is unambiguous, we are restricted to the plain language of the statute; however, the goal of statutory interpretation is to ascertain the intent of the legislature, which, in this case, includes more than an application of the dictionary definitions of the statutory terms. Furthermore, simply stated, requiring a court to determine a reasonable handling charge whenever an individual requests copies of his or her records is absurd, inconvenient and unjust.[5]

Moreover, a reviewing court must presume the legislature was aware of prior legislation and crafted our statute with that knowledge. See State v. Mikusch, 138 Ill. 2d 242, 247-48 (1990) ("[i]t is presumed that the legislature, in enacting various statutes, acts rationally and with full knowledge of all previous enactments"). Prior to the amendment at issue, the statute was silent on the issue of copying fees; however, in Clay v. Little Company of Mary Hospital, 277 Ill. App. 3d 175, 180 (1995), the court interpreted the statute to imply a reasonableness standard. Further, at the time the statute was crafted, nearly every state had a statute related to the cost of obtaining medical records, which fell into one of four main categories: (1) those that required reasonable fees or actual costs; (2) those that specified preset or maximum fees; (3) those that remained silent on reproduction costs; and (4) those that imposed no costs. P. Stearns, Access to and Cost of Reproduction of Patient Medical Records: A Comparison of State Laws, 21 J. Legal Med. 79,

---

[5] We note that both in their brief and at oral argument plaintiffs' argue that looking beyond the plain language of the statute in order to avoid absurd, inconvenient and unjust results is a high standard; however, plaintiffs fail to cite any authority for that proposition.

80-81 (2000).  Tellingly, our legislature chose to explicitly define what was reasonable by providing a maximum fee.

I find further support for my construction in out-of-state cases interpreting similar statutes.[6]  In <u>In re Metro ROI, Inc.</u>, 203 S.W.3d 400 (Tex. App. 2006), a Texas court interpreted the fee announced in its statute as presumptively reasonable.  <u>In re Metro ROI, Inc.</u>, 203 S.W.3d at 406.  The Texas statute provided that "the hospital may charge a reasonable fee" for copying health care information; however, the "fee may not exceed the sum of" a retrieval fee, including the first 10 copied pages, which "may not exceed $30," per page fees thereafter and the actual

---

[6] Although there are numerous statutes which mimic the statute at issue, our research has revealed only two cases on point.  See, *e.g.*, Ala. Code §12-21-6.1 (1995); Cal. Health & Safety Code §123110 (Dearing 1997); Mass. Ann. Laws ch. 112, §12CC (LexisNexis 2004); Mass. Ann. Laws ch. 111, §70 (LexisNexis 2004); Me. Rev. Stat. Ann. tit. 22, §1711-A (2004); Mont. Code Ann. §50-16-816 (2007); Tenn. Code Ann. §68-11-304 (2006); Tex. Health & Safety Code Ann. §241.154 (2001); W. Va. Code Ann. §16-29-2 (LexisNexis 2006) (statutes with forms of "reasonable" ... "but not to exceed" language); Ga. Code Ann. §31-33-3 (2006); In. Code §16-39-9-2 (2007 Supp.); N.H. Rev. Stat. Ann. §151:21 (LexisNexis 2005); Kan. Stat. Ann. §65-4971 (2002); Md. Code Ann., Health-Gen. §4-304 (LexisNexis 2005); Mo. Ann. Stat. §191.227 (West 2004); N.D. Cent. Code § 23-12-14 (2002); Neb. Rev. St. Ann. §71-8404 (LexisNexis 2008); Ohio Rev. Code Ann. §3701.741 (LexisNexis 2005)); Okla. Stat. Ann. tit. 76, §19 (West 2002); S.C. Code Ann. §44-115-80 (2002) (statutes with "not to exceed" language).

cost of mailing. In re Metro ROI, Inc., 203 S.W.3d at 404, citing Tex. Health & Safety Code Ann. §241.154(b) (2001). The Texas court reasoned that, "[b]y specifying the maximum fees which can be charged, the Legislature *** clearly indicated what constitute[d] an unreasonable fee." In re Metro ROI, Inc., 203 S.W.3d at 406. Moreover, in Casillo v. St. John's Episcopal Hospital, 580 N.Y.S.2d 992, 151 Misc. 420, __ (1992), a New York court analyzed the legislative intent of an amended statute commanding that "the reasonable charge for paper copies shall not exceed [75] cents per page" and concluded that:

> "it was enacted to create a unifying definition for the 'reasonable charge' standard and to stem the burgeoning costs being imposed on patients seeking to obtain their own medical records for whatever purpose." Casillo, 580 N.Y.S. 2d at 998, 151 Misc. at __.

See N.Y. Pub. Health Law §17 (McKinney 2002). As the comments by Senator Cullerton and Representative Turner demonstrate, the instant statutes were enacted to achieve the same result; therefore, contrary to the majority's decision, I believe a similar construction should be applied.

Also persuasive is Pratt v. Smart Corp., 968 S.W.2d 868 (Tenn. App. 1997), where a Tennessee court determined that, although the statute did not establish a definite maximum copy charge, parties could not define "reasonable cost" in an excessive manner because doing so would inherently violate the provisions of and the policy behind the statute. Pratt, 968 S.W.2d at 870, citing Tenn. Code. Ann. §68-11-304(a)(2)(A) (West 1998). The Pratt court's construction was later proven accurate when the Tennessee legislature amended the statute in 2007, providing that per-page flat fees and a certification fee "not to exceed" $20 were presumed reasonable. See Tenn. Code Ann. §68-11-304(a)(2)(A)(iii)(a) (West Supp. 2008). Furthermore, both the Massachusetts and New Hampshire legislatures amended their statutes from former generalized

versions of requisite "reasonable costs" to providing a specified, "not to exceed" amount (see Mass. Gen. Laws ch. 111, §70 (____) (amended in 2004); N.H. Rev. Stat. §151:21(X) (____) (amended in 2001)), demonstrating the need to explicitly define what is reasonable and not reserve that determination to a case-by-case basis.

Accordingly, combining the language of our statute, "reason for the law, the problems to be remedied, and the objects and purposes sought" (General Motors Corp., 224 Ill. 2d at 13) and the interpretive guidance from similarly worded out-of-state statutes, I conclude that the $20 handling fee is *per se* reasonable. Any other interpretation would force every provider to undergo an assessment of the appropriate charge for each individual request, inevitably resulting in a lack of uniform charges and natural inequities. Such a result is absurd, unjust and inconvenient and not in line with the legislature's intent, especially when the language was expressly agreed upon by all parties involved.[7]

Accordingly, I would answer the certified question in the affirmative.

---

[7] It belies logic that the record copying companies and health care providers would agree, as indicated by Senator Cullerton, with a statute that potentially exposed them to a case-by-case inquiry as to the reasonableness of the handling fee. See 92d Ill. Gen. Assem., Senate Proceedings, April 5, 2001, at 226-27 (statements of Senator Cullerton).

_____

WALTER SOLON and CYNTHIA ZALETEL, on Behalf
of Themselves and a Class of Others Similarly Situated,

Plaintiffs-Appellees,

v.

MIDWEST MEDICAL RECORDS ASSOCIATION, INC.

Defendant-Appellant.
_____

No. 1-07-2723

Appellate Court of Illinois
First District, Third Division

Filed: November 10, 2008
_____

JUSTICE THEIS delivered the opinion of the court.

Murphy, P.J., concurs.
Greiman, J., dissents.
_____

Appeal from the Circuit Court of Cook County
Honorable James F. Henry, Judge Presiding
_____

For PLAINTIFFS-          Arthur Loevy
APPELLEES,              Michael Kanovitz
                          Loevy & Loevy
                          312 North May, Suite 100
                          Chicago, IL 60607

For DEFENDANT-        Alan R. Borlack
APPELLANT,            Bailey Borlack Nadelhoffer LLC
                          135 South LaSalle, Suite 3950
                          Chicago, IL 60603

                          James A. Flesch
                          Glickman, Flesch & Rosenwein
                          230 West Monroe Street, Suite 800
                          Chicago, IL 60606