OPINION OF THE COURT
Kenneth K. Rohl, J.
"Let us consider the reason of the case. For nothing is law that is not reason.” (Coggs v Bernard, 2 Lord Raymond 909, 911, 92 Eng Rep 107,109, [Powell, J.].)
Ordered that the application of petitioners, Domenic Casillo, *421 Jr. (Casillo) and Barbara Blaskey (Blaskey), for an order directing respondent, St. John’s Episcopal Hospital (St. John’s), to forward to their attorney complete copies of their respective hospital files for September 1, 1991 to September 2, 1991 at a cost of 75 cents per page of paper copy is granted; and it is further ordered that St. John’s shall comply with this order within 10 days of the date hereof.
Through August 31, 1991, Public Health Law §§ 17 and 18 permitted health care facilities and health care providers to impose a "reasonable charge” for reproducing patient files. Effective September 1, 1991 the Legislature amended these sections to cap the "reasonable charge” for paper copies at 75 cents per page.
On September 1, 1991, Casillo and Blaskey were each allegedly injured at the Huntington Hilton Hotel (Hilton) and thereafter treated at St. John’s emergency room from September 1, 1991 to September 2,1991.
Petitioners subsequently retained Ungar, Gerstman & Pomerance (Pomerance) to commence a lawsuit against Hilton for personal injuries. In furtherance thereof, they each signed authorizations directing St. John’s to forward copies of their hospital records to Pomerance. The request was forwarded on October 19, 1991.
On October 30, 1991, St. John’s wrote Pomerance that it would reproduce and forward the records upon prepayment of a fee of $35 per patient file. On November 7, 1991, Pomerance requested an amended bill based upon a maximum fee of 75 cents per page of paper copy.
St. John’s refused and this litigation ensued.
Petitioners contend that since they were "patients” at St. John’s they are entitled to have the hospital forward copies of their own medical records to their authorized agent, Pomerance, at a fee not to exceed 75 cents per page of paper copy (Public Health Law §§ 17,18).
Respondent counters by claiming, inter alla, (1) authorized requests for medical records to be produced to an attorney are governed by CPLR 3101, 3120 and 3121; (2) since Public Health Law § 18 (1) (g) does not list an attorney for a patient as a "qualified person” he is not entitled to obtain a patient’s medical record under this section; (3) records produced pursuant to Public Health Law § 18 are useless for litigation purposes since they may contain redactions as set forth in section 18 (3); (4) Public Health Law § 17 is inapplicable since it *422 mandates production of records only to another physician or hospital; and (5) it is unconscionable to require a hospital to provide copies of records at a maximum of 75 cents per page since this amount is insufficient to cover the costs involved.
Historically, no common-law right or statute existed expressly allowing a patient direct and complete access to his or her own medical records (Cynthia B. v New Rochelle Hosp. Med. Center, 60 NY2d 452). However, the generalized need for prelitigation disclosure of all types of documents was recognized by the Legislature’s enactment of CPLR 3102 (c) ("disclosure to aid in bringing an action”) which permitted such by court order. A movant for such disclosure had the burden of establishing (without reference to the requested documents) the existence of a meritorious cause of action; that the items sought were material and necessary to the framing of the complaint and that these records were not being sought to ascertain if a cause of action lies (Murjani v Ming, 155 AD2d 290; Liberty Imports v Bourguet, 146 AD2d 535).
Mandatory disclosure of papers, documents, and other tangible things between parties to an ongoing litigation is set forth in CPLR 3101 and CPLR 3120 with special reference being made to medical records in CPLR 3121. No specific provision is made for costs. On the other hand, obtaining disclosure from a nonparty requires a court order, including "provision for the defraying of the expenses of the non-party” (CPLR 3120 [b]). No statutory formula exists to calculate these expenses, but case law has deemed these to be "reasonable cost[s]” (Watts v Peekskill Bell, 147 AD2d 838, 840; Sears v Rekuc, 121 Misc 2d 811).
In addition to discovery within the CPLR, the courts have carved out a special exception permitting patients to inspect their medical and dental records upon the theory that while doctors and dentists have nonexclusive custodial rights in their patients’ records, the patients themselves possessed a "property right” sufficient to afford them "reasonable access” regardless of whether or not an action was contemplated (Matter of Gerkin v Werner, 106 Misc 2d 643, 644 [Bracken, J.]; Matter of Striegel v Tofano, 92 Misc 2d 113; cf., People v Cohen, 98 Misc 2d 874).[1]
Within this framework, in 1974 the Legislature enacted Public Health Law § 17 mandating (then as well as now) that "[u]pan the written request of any competent patient, parent or guardian of an infant” a hospital or treating physician *423 must release and deliver the requested records, exclusive of personal notes, "to any other designated physician or hospital, provided, however, that such records concerning [certain] treatment[s rendered to infants] * * * shall not be released or in any manner be made available to the parent or guardian of such infant.” For this, the provider may impose a "reasonable charge.”
At first blush, section 17 appears to limit delivery of the records to other physicians or hospitals. However, careful examination of the statute and cases thereunder establishes otherwise.
The Legislature’s intent not to limit access to only other physicians and hospitals is clearly evidenced by the protection afforded infants against parents and guardians obtaining certain sensitive infant-patient records. Inclusion of the directive to deliver medical records to a patient-designated medical provider accords with well-recognized principles that treating physicians and hospitals have access to their patients’ medical histories (see, Damsker v Haque, 93 AD2d 729; accord, Albany Med. Coll. v McShane, 66 NY2d 982, 984 [citing Public Health Law § 17], rearg denied 67 NY2d 757).
In Matter of Scipione v Long Is. Jewish-Hillside Med. Center (118 Misc 2d 324 [Balletta, J.]), the court in construing the term "reasonable charge” stated:
"The basis for this application is section 17 of the Public Health Law which provides that a patient or parent of an infant patient is entitled to a copy of any and all of the patient’s medical records * * *
"It should be noted that the respondent does not object to providing the records” (emphasis added).
In Matter of Kaplan v North Shore Univ. Hosp. (117 Misc 2d 734), petitioner patient authorized his attorney to obtain a copy of his medical records pursuant to CPLR 3102 (c) in order to identify possible parties (including hospital employees) to be named in a malpractice action. Respondent did not object to copying and delivering the record but claimed entitlement to a "reasonable charge” pursuant to Public Health Law § 17. The court set forth parameters as to what constituted the permissible fee and that upon payment of such the records could be obtained by Kaplan’s attorney.
In Matter of Hernandez v Lutheran Med. Center (104 AD2d 368), petitioner’s attorney likewise sought to obtain patient records in anticipation of a medical malpractice claim. The hospital acceded but sought to impose what it deemed a reasonable fee of $15 for search and retrieval plus $1 per page copied. The Second Department, citing Scipione (supra) and *424 Kaplan (supra), agreed with respondent. In so concluding, the court held: "Pursuant to section 17 of the Public Health Law, patients or their authorized representatives have a right to obtain copies of medical records upon payment of a 'reasonable charge’.” (Supra, at 368; emphasis added.)
In yet another prelitigation discovery case, Matter of Ventura v Long Is. Jewish-Hillside Med. Center (112 AD2d 437), the Second Department expanded "reasonable charge” to permit imposition of a $15 handling fee plus $1.50 per page copied.
In 1986, Public Health Law § 18 was enacted to give "qualified persons”, including patients, direct access to their medical records regardless of the reason therefore.[2] Of special note is subdivision (10) which provides: "Nothing contained in this section shall restrict, expand or in any way limit the disclosure of any information pursuant to articles twenty-three, thirty-one and forty-five of the civil practice law and rules or section six hundred seventy-seven of the county law.”
In setting forth this provision, the Legislature clearly recognized existing case law finding an interrelationship between the CPLR and the Public Health Law (see, Matter of Ventura v Long Is. Jewish-Hillside Med. Center, supra; Matter of Hernandez v Lutheran Med. Center, supra; Matter of Kaplan v North Shore Univ. Hosp., supra). This knowledge is evidenced by its then defining "reasonable charge” as "not exceeding the costs incurred by such provider” (Public Health Law § 18 [2] [e]), effectively capping escalating fees and limiting litigation.
Such legislative intent was impliedly recognized by the Second Department in Paterna v Zandieh (130 AD2d 471) wherein the court, citing Public Health Law §§ 17 and 18, held that an authorized attorney had an absolute right to inspect and copy his client-patient’s X rays.
Further proof that not only the court, but also hospitals, recognized the Legislature’s intent to make complete patient records accessible may be gleaned from the fact that no case has been found or cited to this court where a hospital has challenged an attorney’s right to obtain client-patient medical records.[2] Indeed, the litigations in this area all deal with the *425 attempts by hospitals to establish what are the greatest fees it could charge in providing requested records. If anything, by granting complete access for a fee the hospital assuaged Governor Mario M. Cuomo’s fear that section 18 contained a "loophole” which "could insulate unreasonable refusals by practitioners to grant access to information that patients have a legitimate right to review” (Governor’s mem, 1986 McKinney’s Session Laws of NY, at 3168).[3]
Effective September 1, 1991, Public Health Law §§ 17 and 18 (2) (e) were each amended to provide: "However, the reasonable charge for paper copies shall not exceed seventy-five cents per page.”
After acceding for 20 years to attorney requests for records pursuant to section 17 and 5 years pursuant to section 18 upon the payment of "reasonable charges”, flat fees for minimal records and retrieval fees of $15 to $25 plus $1.50 per page copied for longer records, the hospitals now balk at the practice, claiming inapplicability of the "reasonable charge” criteria of the Public Health Law to attorney-related discovery.
Why the sudden change of position? Simply, because the Legislature has decided to recognize hospital and physician cupidity in providing a patient with his or her own medical records.
Nothing more clearly indicates the lucrative source of income copying has provided to a hospital than the case at bar. St. John’s currently charges $35 for an emergency room record; $35 for an out-patient record and $45 for an in-patient abstract (which includes a "face sheet”, discharge summary, consultations and X ray, EKG, operative and tissue reports). Charges for full in-patient records are $75 for a two-to-five-day hospitalization and a $25 retrieval fee plus $1.50 per page if the hospitalization exceeds five days.
Respondent argues these charges are more than reasonable because medical record requests have become so burdensome as to require three full-time employees "for this task alone” in addition to the cost related to the photocopy equipment, *426 supplies and related expenses such as electricity, maintenance, et al. To support this argument, St. John’s points to the fact that it receives an average of 804 record requests per month, but offers no evidence regarding the average number of pages in a typical record, the type of copying/collating equipment it uses or the time and computers employed in accessing these records. Yet, the hospital would have this court believe this process is so complex that each worker can only retrieve and copy 13 records per day (804 requests divided by an average 21 working days per month divided by 3 workers).
At a conservative estimate of $35 per record copied, St. John’s obtains gross monthly income of $28,140 or $337,680 per year. At a less conservative average of $75 per record (which does not appear unreasonable in light of respondent’s "burdensome” claim), gross monthly income from copying would amount to $60,300 or $723,660 a year.
St. John’s (as well as other New York hospitals) obvious dismay over the legislative capping is evidenced by copies of correspondence submitted herein.
On August 19, 1991, the Medical Record Association of New York State, Inc. (MRANYS) wrote its members concerning the 1991 amendments that:
"MRANYS has been informed that some groups (attorneys, insurers, Etc.) in the state have misinterpreted this new law to mean that all photocopy fees are capped at $.75/page. These groups are in error. The law has only modified sections 17 and 18 of the Public Health Law and section 33.16 of the Mental Hygiene Law. MRANYS is now working with these groups to clarify the situation.
"If you continue to experience problems with these groups after September 1, please let MRANYS know. Also, you might find it useful to reproduce the enclosed chart and give it to requestors who have been misinformed.”
The court notes that the aforementioned chart directs MRA-NYS members to advise attorneys that their requests would require payments of pre-September 1 fees.
On August 30, 1991, general counsel to the New York State Department of Health wrote respondent’s attorneys:
"The third question you ask is whether the maximum charge of seventy-five cents, specified in the amendment to *427 § 18, applies when a health care provider (acting with the consent of the patient) furnishes copies of medical records to attorneys, insurance companies and other third parties.
"In our opinion, if a qualified person makes a written request for patient records pursuant to PHL § 18 and such request indicates that the records are to be released to a designated third party, the health care provider who furnishes the records may not charge more than seventy-five cents per page for paper copies.
"Under PHL § 18 a qualified person may obtain copies of patient records by submitting a written request for such records. If the qualified person wants a third party to receive the records, this can be indicated on the request. The statute does not prohibit the designation of a third party for the purpose of receiving the records nor does it limit the purpose for which a qualified person may request such records. Therefore, a qualified person can request records and have them turned over to a third party.”
The letter further stated that Public Health Law § 18 does not apply to insurance company requests and noted the permissible exclusions of section 18 (3).
The clear and unmistakable tenor of this letter is that an attorney is third party who may be designated by a patient to receive the records. This is not a startling conclusion since it finds this opinion letter in accord with the well-established legal principles set forth (supra).[4]
Undaunted by this opinion letter, St. John’s director of medical records forwarded a form letter dated October 17, 1991 to Pomerance which stated
"Attached please find the guidelines obtained from the Medical Records Association of New York State which directs our correspondence procedure with regard to photocopy fees for medical records.
"You will note these guidelines specifically address the implementation of chapter 165 which was signed by the governor on 6/12/91. This law does not place a maximum fee *428 on attorney, insurance company or other outside reviewer requests.
"Please remit our fees as noted and we will provide requested copies.” (Emphasis added.)
This court is concerned with the role MRANYS apparently plays regarding the setting of fees for medical record reproduction on a State-wide basis. While no allegations of price-setting have been raised, it is clear that regardless of the determinations made herein, each provider is in any event limited to a charge that does not exceed that provider’s actual costs (Public Health Law § 18 [2] [e]). The provider, not MRA-NYS, is bound in law to determine fees vis-á-vis actual costs.
In addition, St. John’s continued to seek a more favorable opinion letter from the New York State Department of Health. On December 12, 1991, general counsel issued such to respondent’s attorneys stating "As noted in our August 30, 1991 letter, the fee limitations contained in PHL § 18, as amended, apply when third parties are furnished copies of medical records pursuant to a request made by a qualified person. A written request by a attorney for copies of medical records, which included a general authorization signed by the patient, would not be considered a request made pursuant to PHL § 18. Such a request would usually be made in the course of litigation and pursuant to provisions of the Civil Practice Law and Rules (CPLR). It would usually be made in order to obtain a complete copy of the patient’s medical record (or portion(s) thereof). Requests made pursuant to PHL § 18 are subject to certain exclusions (PHL § 18 (1) (e), 2 (c) and (3)).”
This opinion letter amounts to little more than an attempt at form over substance in the face of 20 years of well-recognized legal principles and as previously recognized in the August 30, 1991 letter.
The Legislature, when enacting or amending statutes, is presumed to know the existing body of law and does not act in a vacuum (Matter of Thomas v Bethlehem Steel Corp., 95 AD2d 118, affd 63 NY2d 150; see, McKinney’s Cons Laws of NY, Book 1, Statutes § 91, at 175). Statutory enactments are done with a purpose that is practical, reasonable and directed to a useful result and are to be analyzed and interpreted to achieve the purpose for which enacted and with common sense and justice (Matter of Ellington Constr. Corp. v Zoning Bd. of Appeals, 77 NY2d 114; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 96, 141, 143, 146).
*429 The 1991 amendments capping copying costs within the definition of "reasonable charge” was not intended to create a plethora of litigation where the courts would be forced to determine what is an allowable fee in this case or that case. Nor was it intended to overrule, dampen or otherwise limit the body of law developed over the past 20 years regarding patient accessibility to medical records. Rather, it was enacted to create a unifying definition for the "reasonable charge” standard and to stem the burgeoning costs being imposed on patients seeking to obtain their own medical records for whatever purpose. While a person can conceivably seek a judicial hearing to determine whether charges imposed are "reasonable” (see, Matter of Hernandez v Lutheran Med. Center, 104 AD2d 368, supra), the reality is that the costs of litigation are so high as to far outweigh the economic benefit to be gained. In effect, patients and their designated third parties are at the mercy of medical providers who can basically charge whatever they want with almost absolute impunity.
This is the inequity the Legislature has cured. This is the guarantee to patients that they may obtain their records at a reasonable price regardless of their reason for so obtaining. This is the guarantee to patients that they may pursue claims for injuries allegedly incurred and that they will be able to secure a "just, speedy and inexpensive determination” (CPLR 104).
In summary:
(1) An attorney authorized by a patient to obtain his or her medical record is a qualified person to request and obtain such records.
(2) "Reasonable charge” is the measure of fees which may be imposed by a provider of medical records to a patient or qualified person, regardless of the intended use thereof.
(3) "Reasonable charge” is intended to be the unifying standard whereby the cost to a patient or qualified person obtaining the reproduced patient’s medical record is limited to costs actually incurred by the provider, except that the charge for paper copies shall not exceed 75 cents per page.
The court would note that this result was effectively achieved in Matter of Russo (Sup Ct, Westchester County, Jan. 23, 1992, index No. 17691/91), a prelitigation discovery case, wherein the court held: "The Court wishes to admonish the parties that this is a motion which was totally unnecessary. *430 Clearly, the claimants are entitled to copies of the [medical] records of Carol Russo. Public Health Law Sections 17 and 18. It is also clear that the respondents may charge seventy-five cents (75(¡0 per page for such records. Public Health Law Sections 17 and 18.”
Petitioners’ application is granted.

. Matter of Culbertson (57 Misc 2d 391) and Matter of Finkle (90 Misc 2d 550, affd sub nom. Matter of Maltin, 59 AD2d 862) hold that a patient has no possessory or inspection right in a deceased physician’s medical records but that access to such must be given to a subsequently authorized physician.

. Matter of Russo (Sup Ct, Westchester County, Jan. 23, 1992, index No. 17691/91), while directing discovery of hospital records under Public Health Law §§ 17, 18, does not state whether challenge was made to the attorney’s right to obtain such. In addition, respondent’s counsel has orally advised this court that an action with issue identical to those herein is pending before the Supreme Court, Queens County.

. Certain redactions are permissible pursuant to Public Health Law § 18 (3), ostensibly to protect a patient in an appropriate situation from suffering substantial and identifiable harm or to delete a physician’s personal notes.

. A similar letter was sent to Medical Copy Services, Philadelphia, Pa. on September 30,1991.