Docket No. 107719.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

WALTER SOLON *et al.*, on Behalf of Themselves and a Class of Others Similarly Situated, Appellee, v. MIDWEST MEDICAL RECORDS ASSOCIATION, INC., Appellant.

*Opinion filed March 18, 2010.*

JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Kilbride, Garman, and Burke concurred in the judgment and opinion.

## OPINION

The certified question at issue addresses the proper interpretation of sections 8–2001 and 8–2003 of the Code of Civil Procedure (735 ILCS 5/8–2001, 8–2003 (West 2004)), which limit any handling charge imposed for processing requests for copies of medical records. In its motion to dismiss the lawsuit filed by the plaintiff class, the defendant, Midwest Medical Records Association, Inc. (MMRA), argued that charging a $20 handling charge for processing medical record requests was *per se* reasonable under sections 8–2001 and 8–2003. The circuit court of Cook County denied the motion to dismiss but agreed to certify a question on the issue for interlocutory appeal under Supreme Court Rule 308 (155 Ill. 2d R. 308). With one

justice dissenting, the appellate court held that a $20 handling charge was not *per se* reasonable under the statutory language. 386 Ill. App. 3d 78.

MMRA sought review of the statutory construction question in this court. For the following reasons, we reverse the judgment of the appellate court and remand the cause to the circuit court for further proceedings consistent with this opinion.

## I. BACKGROUND

In 2004, named plaintiffs Walter Solon and Cynthia Zaletel filed a four-count class action lawsuit in the circuit court of Cook County against defendant MMRA, a management company that contracts with hospitals and health-care practitioners to handle requests for patient medical records. The trial court certified the class, and amended complaints were filed. The third-amended complaint alleged that MMRA overcharged for fulfilling patient requests for medical records, resulting in a breach of contract, as well as violations of sections 8–2001 and 8–2003 of the Code (735 ILCS 5/8–2001, 8–2003 (West 2004)), section 2 of the Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2004)), and section 2 of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2 (West 2004)). This appeal relates only to count II of the third-amended complaint, alleging that MMRA violated restrictions in sections 8–2001 and 8–2003 of the Code by charging more than the permissible amount for providing requested copies of medical records.

As alleged in the complaint, MMRA entered into exclusive contracts with health-care providers to fulfill requests for medical records. MMRA employees worked within those offices, receiving copy requests, locating and copying records, sending copies, and performing related administrative work. MMRA did not charge the health-care providers for these services, choosing instead to bill directly the requesting party. MMRA charged a flat handling charge plus a variable per-page charge for the copies. The handling charges of $20 in 2002 and $20.48 in 2003 were within the statutory "not to exceed" amount (effective January 20, 2003, the Comptroller adjusted the handling charge for inflation from $20 to $20.48 in accordance

with the Consumer Price Index pursuant to section 8–2006 of the Code (735 ILCS 5/8–2006 (West 2004))). The third-amended complaint alleged that MMRA's charges violated the pricing restrictions in sections 8–2001 and 8–2003 of the Code.

The complaint sought damages "in the amount of the difference between the actual sums charged for these copies and the least of the reasonable expense of production, Illinois' statutory price limit for copies applicable to the type of copies MMRA furnished, or a fair price for the copies," plus expenses and attorney fees. The complaint also sought an injunction barring MMRA "from charging prices in excess of the least of the reasonable expense of production, Illinois' statutory price limit for copies applicable to the type of copies MMRA furnished, or a fair price for the copies."

MMRA filed a motion to dismiss count II of the third-amended complaint under section 2–615 of the Code (735 ILCS 5/2–615 (West 2004)), arguing that the handling charges were *per se* reasonable as within the "not to exceed" charges permitted by the statutes. MMRA noted that other than the "not to exceed" amount, the statutes do not provide any criteria (or expert commission or board) to determine what is a "reasonable" handling charge. Among other cases, MMRA cited a recent Texas opinion, *In re Metro ROI, Inc.*, 203 S.W.3d 400, 406 (Tex. App. 2006), which construed the maximum fee set out in its similarly worded statute as presumptively reasonable. The trial court denied the motion to dismiss.

MMRA filed a motion for certification of an immediate interlocutory appeal under Supreme Court Rule 308 (155 Ill. 2d R. 308), and the trial court certified the following question for review: "Is it reasonable *per se* for a provider of medical record copies under 735 ILCS §§5/8–2001, 2003 to charge the full amount of the $20 process fee, or is the provider limited to a lesser charge if the evidence shows that the lesser charge is all that is reasonable?"

The appellate court initially denied MMRA's request for interlocutory appeal under Rule 308, and MMRA filed a petition for leave to appeal in this court. We entered a supervisory order instructing the appellate court to vacate its order and to consider the certified question on the merits. A divided appellate court then found that the statutory language was unambiguous and that a flat $20 handling charge was not *per se* reasonable. 386 Ill. App. 3d at 81-84.

The court rejected MMRA's argument that extrinsic evidence, such as legislative history, should be considered in interpreting the statutory provisions and instead examined only the plain language of the statutory provisions. 386 Ill. App. 3d at 82-83. In his dissent, Justice Greiman relied upon both legislative history and the rationale of *In re Metro ROI, Inc.*, 203 S.W.3d 400, to conclude that a flat $20 handling charge was *per se* reasonable and that the majority's conclusion created absurd, unjust, and inconvenient consequences. 386 Ill. App. 3d at 84-88 (Greiman, J., dissenting).

This court allowed MMRA's petition for leave to appeal. 210 Ill. 2d R. 315. We also granted the Illinois Trial Lawyers Association (ITLA) leave to file an *amicus curiae* brief. 210 Ill. 2d R. 345.

## II. ANALYSIS

The trial court's certified question raises the sole issue for review in this interlocutory appeal. To qualify for an interlocutory appeal under Supreme Court Rule 308 (155 Ill. 2d R. 308), a certified question must present an issue of law that is reviewable *de novo*. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 153 (2007). The certified question here is one of statutory construction, well established to constitute a question of law subject to *de novo* review. *People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73, 79 (2009).

The certified question we are asked to answer is: "Is it reasonable *per se* for a provider of medical record copies under 735 ILCS §§5/8–2001, 2003 to charge the full amount of the $20 process fee, or is the provider limited to a lesser charge if the evidence shows that the lesser charge is all that is reasonable?"

In answering the same question, the appellate majority determined that a $20 handling charge was not *per se* reasonable. MMRA argues that this interpretation causes absurd, unjust, and inconvenient results by endlessly forcing each record provider to face litigation over the reasonableness of the handling charge assessed for each individual record request without any judicial guidelines. In addition, MMRA argues that the appellate court majority failed to consider the legislative purpose, the evils to be remedied, the consequences of the alternative constructions set out in the certified question, and the real-world context and activities.

As we have consistently held, our primary objective in interpreting a statute is to ascertain and give effect to the intent of the legislature. *Blum v. Koster*, 235 Ill. 2d 21, 29 (2009). The most reliable indicator of such intent is the language of the statute, which is to be given its plain and ordinary meaning. *Blum*, 235 Ill. 2d at 29.

In determining the plain meaning of the statute, we consider the statute it its entirety, the subject it addresses, and the apparent intent of the legislature in enacting it. *Blum*, 235 Ill. 2d at 29. When the statutory language is clear and unambiguous, it must be applied as written, without resort to extrinsic aids of statutory construction. *Blum*, 235 Ill. 2d at 29.

However, if a statute is capable of being understood by reasonably well-informed persons in two or more different ways, the statute will be deemed ambiguous. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 11 (2009). If the statute is ambiguous, the court may consider extrinsic aids of construction in order to discern the legislative intent. *Landis*, 235 Ill. 2d at 11. We construe the statute to avoid rendering any part of it meaningless or superfluous. *Blum*, 235 Ill. 2d at 29. We do not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent. *Blum*, 235 Ill. 2d at 29.

We may also consider the consequences that would result from construing the statute one way or the other. *Landis*, 235 Ill. 2d at 12. In doing so, we presume that the legislature did not intend absurd, inconvenient, or unjust consequences. *Landis*, 235 Ill. 2d at 12.

With these principles in mind, we turn to the applicable statutory provisions, sections 8–2001 and 8–2003 of the Code (735 ILCS 5/8–2001, 8–2003 (West 2004)). Section 8–2001 governs the records of a "health care facility," and section 8–2003 applies to the records of "health care practitioners." A "health care facility" is "a public or private hospital, ambulatory surgical treatment center, nursing home, independent practice association, or physician hospital organization, or any other entity where health care services are provided to any person." 735 ILCS 5/8–2001 (West 2004). A "practitioner" is "any health care practitioner, including a physician, dentist, podiatrist, advanced practice nurse, physician assistant, clinical psychologist, or clinical social worker," including "a medical office, health care clinic, health department, group practice, and any other organizational

structure for a licensed professional to provide health care services," but not "a health care facility as defined in Section 8–2001." 735 ILCS 5/8–2003 (West 2004). Here, we refer to "health care facilities" and "practitioners" collectively as "health-care providers."

Except for the type of health-care provider affected, the relevant portions of sections 8–2001 and 8–2003 of the Code are identical and provide, in pertinent part, as follows:

> "The [health-care provider] shall be reimbursed by the person requesting [patient medical] records at the time of such copying for all reasonable expenses, including the costs of independent copy service companies, incurred by the [health-care provider] in connection with such copying not to exceed a $20 handling charge for processing the request for copies, and 75 cents per page for the first through 25th pages, 50 cents per page for the 26th through 50th pages, and 25 cents per page for all pages in excess of 50 (except that the charge shall not exceed $1.25 per page for any copies made from microfiche or microfilm), and actual shipping costs. These rates shall be automatically adjusted as set forth in Section 8–2006. The [health-care provider] may, however, charge for the reasonable cost of all duplication of record material or information that cannot routinely be copied or duplicated on a standard commercial photocopy machine such as x-ray films or pictures." 735 ILCS 5/8–2001, 8–2003 (West 2004).

MMRA argues that the statutory language is ambiguous, that the legislative history demonstrates that the $20 cap on the handling charge was a compromise among various parties interested in the legislation, and that the legislature intended to make any handling charge of $20 or less *per se* reasonable. MMRA claims the legislature defined the only "unreasonable" handling charge as one over $20.

On the other hand, the plaintiff class argues that the statutory language is unambiguous and that the plain language of the statutory provisions demonstrates the legislature's intent to limit the handling charge to the reimbursement of a sum reasonably representing the expenses incurred in processing a copy request as long as that amount is not over $20.

One reasonable interpretation of the statutory language is that the

health-care provider is to be reimbursed for all reasonable expenses incurred in processing the copy request, *as long as those reasonable expenses do not exceed* "a $20 handling charge for processing the request for copies, and 75 cents per page for the first through 25th pages, 50 cents per page for the 26th through 50th pages, and 25 cents per page for all pages in excess of 50." 735 ILCS 5/8–2001, 8–2003 (West 2004). Under that interpretation, the health-care provider would be reimbursed for the lesser of: (1) actual expenses incurred; (2) reasonable expenses incurred; or (3) the amount of the caps. Under that interpretation, if actual expenses incurred were more than what was reasonable, the provider would be reimbursed for only what was reasonable. Moreover, even if actual expenses incurred were reasonable, if they were more than the amount of the caps, the provider would be reimbursed for only the amount of the caps.

However, another equally reasonable interpretation of the statutory language is that the health-care provider is to be reimbursed for all reasonable expenses incurred in processing the copy request and that *"reasonable expenses" are specifically defined as* "not to exceed a $20 handling charge for processing the request for copies, and 75 cents per page for the first through 25th pages, 50 cents per page for the 26th through 50th pages, and 25 cents per page for all pages in excess of 50." 735 ILCS 5/8–2001, 8–2003 (West 2004). Under this interpretation, although the health-care provider (or copy company) would always be free to charge less than the $20 handling charge, as long as the handling charge did not exceed $20, it would be presumptively reasonable.

We agree with MMRA that the statutory language is ambiguous in that it is capable of being understood by reasonably well-informed persons in two or more different ways. See *Landis*, 235 Ill. 2d at 11. Given this apparent ambiguity in the statutory language, it is appropriate for us to consider extrinsic evidence, such as legislative history, to ascertain the legislative intent. See *People v. Bailey*, 232 Ill. 2d 285, 292 (2009). In this case, there is an abundance of legislative history, which clearly demonstrates the legislative intent.

The prior version of the applicable statute provided, in pertinent part, as follows: "The [health-care provider] shall be reimbursed by the person requesting such records at the time of such examination or copying, for all reasonable expenses incurred by the [health-care

provider] in connection with such examination or copying." 735 ILCS 5/8–2003 (West 2000). At that time, there was nothing in the statute about copy companies, handling fees, per-page charges, or shipping charges; instead, providers were to be reimbursed simply for "all reasonable expenses incurred *** in connection with such examination or copying." 735 ILCS 5/8–2003 (West 2000).

In introducing Senate Bill 721, Senator John Cullerton, the sponsor of the bill, stated:

> "This bill *** reflects a compromise, the issue being how much money patients *** can be charged to get their own records back. *** [A]s a result of our negotiations ***, we were able to get the Trial Lawyers, the Medical Society, the Hospital Association and the representatives of the companies that *** copy records to agree to this procedure ***. *** [I]t basically sets up a sliding scale of copying charges *and an initial fee that you have to pay, a handling charge of [$20]*. And as I said, everybody has agreed to it." (Emphasis added.) 92d Ill. Gen. Assem., Senate Proceedings, April 5, 2001, at 226-27 (statements of Senator Cullerton).

Representative John Turner, the House sponsor of the bill, stated that the bill " '[p]rovides that the charges[ ] imposed by a hospital or a physician for copying records may not exceed a $20 handling charge plus [75] cents per page for the first 25 pages, and then on a sliding scale.' " 92d Ill. Gen. Assem., House Proceedings, May 8, 2001, at 42 (statements of Representative Turner).

When asked if there was any opposition to the bill, Representative Turner stated:

> "Not to my knowledge. I believe that we have changed the provisions in the Bill so many times as to accommodate all of the opposition *** there has been in the past. So, I believe, the honest and correct answer to your question is 'no', there is no opposition.
>
> ***
>
> *** I also believe that if there was opposition I would know about it. Because the Bill has been around for approximately two and a half[ ] or three years." 92d Ill. Gen. Assem., House Proceedings, May 8, 2001, at 42-43

(statements of Representative Turner).

When asked about how they arrived at the fees, Representative Turner stated:

"[T]he amount that is going to be the maximum that can be charged originates from compromise between the Trial Lawyers, the Illinois State Bar Association, the Hospital Association, the Medical Society, and others, including those who represent the copying companies. The amount that is allowed to be charged has changed many times. *** [T]he latest compromise provides for a sliding scale. *** [I]t allows for [75] cents per page for *** pages 1 through 25, and then [for] pages 26 through 50, I believe, it's [50] cents per page, and [25] cents thereafter. I think I'm stating that correctly. *** [T]here is no magic though *** in how *** we [came] up with [75] cents, or [50] cents, or the $20 handling charge. It simply was a matter of negotiations after a very lengthy process." 92d Ill. Gen. Assem., House Proceedings, May 8, 2001, at 43 (statements of Representative Turner).

Representative Turner confirmed that the $20 handling charge could be deemed an "order fee" or a "deposit fee" at the time the records were requested. 92d Ill. Gen. Assem., House Proceedings, May 8, 2001, at 46.

In closing, Representative Turner stated:

"The genesis of this Bill actually was not from the Trial Lawyers Association nor was it from the ISBA. It came from what I saw going on in my law practice where I would, from time to time on behalf of clients, request medical records. On several occasions I would get one page for $30, or two pages for $35, or perhaps three or four pages for $50. It became *** abundantly clear that we needed to try to address this situation through legislation that would put some cap on what the charges would be for medical records. *** [T]he purpose of this is not to assist lawyers, it's not to assist doctors. It's simply to assist patients *** so that they can get copies of their own records at a reasonable cost. This is a Bill that has been compromised. I think that it does address, in part, the concerns that caused me to raise the issue in the first place."

92d Ill. Gen. Assem., House Proceedings, May 8, 2001, at 47-48 (statements of Representative Turner).

After a careful review of the applicable statutory provisions along with the legislative history, we conclude that, by specifically allowing for reimbursement of a handling charge "not to exceed *** $20," the legislature intended to define what was a "reasonable" handling charge. Although health-care providers and copy companies can charge less than the $20 handling charge if they so choose, they cannot charge more. The legislature thought it necessary to specifically define what was reasonable in order to avoid arbitrary and unreasonable charges to patients, which apparently was happening under the prior version of the statute.

We find further support for our conclusion in out-of-state cases interpreting similar statutes. For example, in *In re Metro ROI, Inc.*, 203 S.W.3d 400 (Tex. App. 2006), a Texas court interpreted the maximum fee set out in its statute as presumptively reasonable. *In re Metro ROI, Inc.*, 203 S.W.3d at 406. The Texas statute provided that "the hospital may charge a reasonable fee" for copying health-care information; however, the " 'fee may not exceed the sum of *** a basic retrieval or processing fee, which must include the fee for providing the first 10 pages of the copies and which may not exceed $30' "; variable per page charges thereafter; and " 'the actual cost of mailing, shipping, or otherwise delivering the provided copies.' " *In re Metro ROI, Inc.*, 203 S.W.3d at 404, quoting Tex. Health & Safety Code Ann. §241.154(b) (Vernon 2001). The Texas court reasoned that, "[b]y specifying the maximum fees which can be charged, the Legislature has clearly indicated what constitutes an unreasonable fee." *In re Metro ROI, Inc.*, 203 S.W.3d at 406.

Moreover, in *In re Casillo*, 151 Misc. 2d 420, 580 N.Y.S.2d 992 (N.Y. Sup. 1992), a New York court analyzed the legislative intent of an amended statute that stated that "the reasonable charge for paper copies shall not exceed [75] cents per page" and concluded that "it was enacted to create a unifying definition for the 'reasonable charge' standard and to stem the burgeoning costs being imposed on patients seeking to obtain their own medical records for whatever purpose." *Casillo*, 151 Misc. 2d at 425, 429, 580 N.Y.S.2d at 996, 998. See N.Y. Pub. Health Law §17 (McKinney 2001). As the comments by Senator Cullerton and Representative Turner demonstrate, the

applicable statutory provisions in the present case were enacted to achieve the same result; therefore, we believe a similar construction should be applied.

Accordingly, we conclude that the $20 handling fee is *per se* reasonable. The alternative interpretation would force every health-care provider to undergo an assessment of the appropriate charge for each individual copy request, inevitably resulting in a lack of uniform charges and natural inequities. Such a result is absurd, unjust, and inconvenient and not in line with the intent of the legislature, especially where, as here, the language was expressly agreed upon by competing interested parties after lengthy negotiations.

### III. CONCLUSION

For the foregoing reasons, we answer the certified question as follows: It is reasonable *per se* for a provider of medical record copies under sections 8–2001 and 8–2003 of the Code to charge the full amount of the $20 process fee. Accordingly, we reverse the judgment of the appellate court and remand the cause to the circuit court for further proceedings consistent with this opinion.

*Certified question answered;*
*appellate court judgment reversed;*
*cause remanded.*