NOTICE
Decision filed 03/28/19. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2019 IL App (5th) 180064

NO. 5-18-0064

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE CITY OF EFFINGHAM, ILLINOIS, a Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of Effingham County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 17-SC-576 |
| DISS TRUCK & REPAIR, LLC, | ) ) | Honorable Amanda S. Ade-Harlow, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE WELCH delivered the judgment of the court, with opinion.
Justices Chapman and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1 The appellant, the City of Effingham, Illinois (City), sought compensation for extrication services performed for the benefit of the appellee, Diss Truck & Repair, LLC (LLC), a nonresident, pursuant to section 11-6-1.1 of the Illinois Municipal Code (Code) (65 ILCS 5/11-6-1.1 (West 2016)). The trial court, finding that "firefighting services" under section 11-6-1.1 did not include extrication services performed for nonresidents, concluded that the City was not entitled to compensation. For the reasons that follow, we reverse and remand for further proceedings.

¶ 2 I. BACKGROUND

¶ 3 Section 11-6-1.1 of the Code provides as follows:

1

"A municipality may choose to provide firefighting services to property outside its corporate limits. The corporate authorities of each municipality may fix, charge, and collect firefighting service fees not exceeding the actual cost of the service for all firefighting services rendered by the municipality against persons, businesses, and other entities that are not residents of the municipality." *Id.*

Pursuant to section 11-6-1.1, the City passed ordinance No. 102-2015, which allows the City to seek reimbursement for extrication services performed by the Effingham fire department (EFD) for vehicles outside the city limits and for vehicles owned, operated, or leased by persons, businesses, and other entities that are nonresidents.

¶ 4    On June 6, 2017, Lowell Ingram and his partner, Charles Kevin Diss, were contacted by UP trucking to repair a semitrailer that had broken down at the Pinnacle parking lot in Effingham. While performing those repairs, the trailer jacks failed, and the semitrailer fell on top of Ingram, trapping him underneath. The front of the semitrailer was completely on the ground. Diss flagged down a Pinnacle employee to call 9-1-1, and the EFD was among the responding authorities. Joseph Holomy, the chief of the EFD, was at the scene and requested extrication assistance from a towing and recovery company and local plant personnel. The local plant personnel brought forklifts from inside the plant to assist with lifting the semitrailer. Although Ingram was freed from the semitrailer, he subsequently passed away as a result of his injuries.

¶ 5    There were six full-time EFD firefighters and four part-time EFD firefighters on the scene to assist with the extrication services. Pursuant to the union contract, each firefighter was paid for two hours of time. A bill for the extrication services was sent to the LLC because Ingram was its employee and co-owner, and neither the business nor its owners were

2

residents of Effingham. The bill included labor and equipment charges totaling $2072. The LLC did not pay the bill, and the City filed a small claims complaint against the LLC on November 9, 2017.

¶ 6     After a hearing on the small claims complaint, the trial court questioned whether section 11-6-1.1 of the Code allowed the City to obtain reimbursement for extrication services as "firefighting services." The court noted that the statute did not define "firefighting services" and that it was not clear whether "firefighting services" included extrication services performed by the EFD on behalf of nonresidents. The court noted that a similar provision of the Code (*id.* § 11-6-10(a)) provided for reimbursement to the volunteer fire departments for "all services" rendered to nonresidents and not just for "firefighting services." Ultimately, the court found that section 11-6-1.1 of the Code did not include extrication services performed by the EFD and entered judgment in favor of the LLC. Thereafter, the court entered a docket entry on January 23, 2018, finding that the City had not proven its case. The City appeals.

¶ 7                                    II. ANALYSIS

¶ 8     Initially, we note that no appellee's brief has been filed in this case. Our supreme court has stated the following with regard to cases where no appellee's brief has been filed:

> "[I]t seems that if the record is simple and the claimed errors are such that the court can easily decide them without the aid of an appellee's brief, the court of review should decide the merits of the appeal. In other cases if the appellant's brief demonstrates *prima facie* reversible error and the contentions of the brief find support in the record the judgment of the trial court may be reversed." *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

We find that the case before us falls within the second type discussed by the supreme court.

3

¶ 9    The sole issue before us on appeal requires us to interpret section 11-6-1.1 of the Code to determine whether the term "firefighting services" includes the extrication services performed by a fire department on behalf of a nonresident. An issue of statutory construction is reviewed *de novo. Citizens Opposing Pollution v. ExxonMobil Coal U.S.A.*, 2012 IL 111286, ¶ 23. The primary objective of statutory construction is to ascertain and give effect to the legislature's intent. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 440 (2010). The best indication of such intent is the language of the statute itself, which must be given its plain and ordinary meaning. *Id.* Where the statutory language is clear and unambiguous, it must be applied as written without resort to extrinsic aids of statutory construction. *Id.* However, where a statute is capable of being understood by reasonably well-informed persons in two or more different ways, then the statute is ambiguous. *Id.* If a statute is ambiguous, then the court may consider extrinsic aids of construction to discern the legislative intent. *Id.* In interpreting a statute, the court presumes that the legislature did not intend absurdity, inconvenience, or injustice. *Citizens Opposing Pollution*, 2012 IL 111286, ¶ 23.

¶ 10    Here, section 11-6-1.1 of the Code allows the corporate authorities of a municipality to fix, charge, and collect firefighting service fees not exceeding the actual cost of the service for all firefighting services rendered by the municipality against persons, businesses, and other entities that are nonresidents. 65 ILCS 5/11-6-1.1 (West 2016). There is no statutory definition for the term "firefighting services." A reasonable interpretation of "firefighting services" could be that the term is limited to the specific service of fighting fires and those services directly incidental to fighting any such fires; the trial court took this view. However, another reasonable interpretation of the term is that "firefighting services" includes all services performed by a municipal fire department on behalf of nonresidents, which includes extrication services. As the statutory

4

language is ambiguous (*i.e.*, it is subject to two or more reasonable interpretations), it is appropriate for us to consider extrinsic evidence, such as legislative history, to ascertain the legislative intent. See *Solon*, 236 Ill. 2d at 443.

¶ 11 Section 11-6-1.1 of the Code became effective on July 23, 2003, pursuant to the passage of Public Act 93-304, an "Act in relation to fire protection." Pub. Act 93-304 (eff. July 23, 2003) (adding 65 ILCS 5/11-6-1.1). Public Act 93-304 also made a similar amendment to the Township Code, which provided that the township may fix, charge, and collect fees not exceeding the reasonable cost of the service for all services rendered by the township against persons, businesses, and other entities who are not township residents. Pub. Act 93-304 (eff. July 23, 2003) (adding 60 ILCS 1/30-166).[1]

¶ 12 Before its passage, Public Act 93-304 was House Bill 120. During the third reading of House Bill 120 on April 4, 2003, Representative Michael K. Smith, a sponsor of the bill, described the bill as follows:

> "This would simply allow municipalities and township fire departments to charge nonresident persons or businesses for fire protection services. Basically, if someone is in need of *** a fire protection service in a municipality, they don't live in the municipality, the municipality, currently, cannot charge them for that service. Fire protection districts do have this power, municipalities do not. So this is just bringing parity to them." 93d Ill. Gen. Assem., House Proceedings, Apr. 4, 2003, at 239-40 (statements of Representative Smith).[2]

---

[1]This statute has since been recodified as 60 ILCS 1/30-167 but remains substantively unchanged.

[2]The statutory authority for a fire protection district's ability to seek reimbursement is set forth in section 11f(a) of the Fire Protection District Act (70 ILCS 705/11f(a) (West 2004)). As of 2003, section 11f(a) allowed a fire protection district to fix, charge, and collect fees not exceeding the reasonable cost of the service for all services rendered by the district against persons,

¶ 13    Thereafter, on May 9, 2003, during the Senate's third reading of House Bill 120, Senator George P. Shadid, the Senate sponsor of the bill, stated as follows:

> "House Bill 120 addresses a problem in downstate communities where there are holes in the fire protection services. If a municipality or a township fire department is called to serve an area that doesn't pay any fire protection tax, House Bill 120 allows those municipalities and township fire departments to charge nonresident persons, businesses and other entities for fire protection services." 93d Ill. Gen. Assem., Senate Proceedings, May 9, 2003, at 7 (statements of Senator Shadid).

House Bill 120 passed without further discussion and became effective on July 23, 2003.

¶ 14    There is no indication in the legislative history that the legislature's intent was to limit a municipality's or township's recovery of the cost of services to only services performed while fighting fires. Instead, the legislative history reveals that the intent was to allow reimbursement from nonresidents whenever the fire department is called to serve an area.

¶ 15    This conclusion is apparent when comparing legislative history and lawmakers' comments regarding similar legislation. After Public Act 93-304 was passed into law, the legislature enacted 65 ILCS 5/11-6-10, pursuant to the passage of Public Act 99-770 (Pub. Act 99-770 (eff. Aug. 12, 2016) (adding 65 ILCS 5/11-6-10)), a similar statute that extended the right of reimbursement to volunteer municipal fire departments and volunteer firefighters of any municipal fire department. Section 11-6-10 of the Code (65 ILCS 5/11-6-10(a) (West 2016)) provided that municipalities may fix, charge, and collect fees not exceeding the reasonable cost of the service for all services rendered by a volunteer municipal fire department or a volunteer

---

businesses, and other entities who are not residents of the fire protection districts. Although other subsections of this statute have been amended, subsection (a) remains the same.

firefighter of any municipal fire department for persons, businesses, and other entities who are nonresidents. This statute addressed an apparent gap in the previously passed legislation.

¶ 16 Before its passage, Public Act 99-770 was House Bill 4522. During the third reading before the House on April 19, 2016, the following discussion was held regarding this bill:

"HOFFMAN: *** This is an initiative of municipal volunteer fire departments. It indicates that a municipal volunteer fire department that *** answers a call of a nonresident for services rendered, may do the same thing as a fire protection district already has the power to do and that's charge for *** the services that they provide. This just makes it consistent with what fire protection districts already can do. ***

* * *

HOFFMAN: …a current law allows fire protection districts that answer a call outside of their jurisdiction. For instance, *** the fire protection district who goes and answers the call right outside of a car crash. They then can get reimbursed by the insurance company when they're answering a nonresidence call. That's for the fire protection districts; however, a municipal volunteer district cannot get reimbursed.

SANDACK: *** So, the distinction is fire protection *** districts can get service... provide services outside their jurisdiction subject to reimbursement for insurance, but a voluntary municipal department may not?

HOFFMAN: Currently they cannot.

SANDACK: Okay. What about a municipal department right now, not a voluntary department, but a municipal department? Can they do the very same thing a fire protection district can do?

HOFFMAN: Yes, I think so. Yes, they can.

7

SANDACK: *** [S]o *** your Bill basically would bring parity to volunteer municipal departments with municipal departments and fire protection districts?

HOFFMAN: Yes. The specifics...specifically came from Fairmont City Fire Protection District, which is a municipal volunteer fire department. They *** are right next to the interstate, and they always get called to address problems and crashes on the interstate. And this would allow them reimbursement, the same as everybody else.

* * *

MOFFITT: It's good public policy. It really helps the taxpayers of the district that's providing the service. ***

* * *

HOFFMAN: *** And what this does is it actually will help the taxpayers in the volunteer municipal fire department because it'll *** lessen the burden for them when the fire department is answering calls of nonresidents who aren't contributing to that fire department's budget." 99th Ill. Gen. Assem., House Proceedings, Apr. 19, 2016, at 92-96 (statements of Representatives Hoffman, Sandack, and Moffitt).

¶ 17    The legislature also extended a municipality's right to reimbursement for specialized rescue services (65 ILCS 5/11-6-5 (West 2008)) and technical rescue services (*id.* § 11-6-6). Before its passage, section 11-6-5 was known as Senate Bill 1244. During the May 30, 2007, third reading of this bill in the House, the following exchange occurred:

"MOFFITT: *** And what that Amendment does is allow fire departments to charge entities that require the specialized emergency teams, who have been found at fault by the U.S. Occupational and Safety Administration or by the Illinois Department of Labor. ***

8

* * *

BLACK: *** Currently, as you know, districts can charge a fee for emergency services to nonresidents of the fire departments...

MOFFITT: ...right.

BLACK: ...or districts.

* * *

BLACK: *** I'm talking about what's in current legislation, where fire departments can charge a fee, the rate is a hundred and twenty-five dollars ($125) an hour per vehicle and thirty-five dollars ($35) per hour per firefighter.

MOFFITT: Right. That's already in statute.

BLACK: Yeah. That's already in statute, and it said, a fee for emergency services. Now, what's that... under the current law, what's the definition of 'emergency service'?

MOFFITT: Current law would be if your local fire department provided that... emergency response would call the fire department for an out-of-district resident.

* * *

HOLBROOK: *** In many areas of the state, like in mine, these are volunteers that give their time, they train for literally hundreds of hours, and occasionally they're called out on situations that right now our fire departments can collective [*sic*] ***. *** Our volunteers in many, many cases, especially downstate, and [*sic*] this may just help one of those groups stay solvent. *** It's the same fee that the fire departments charge. We're just covering the rescue people. *** [T]his is the right thing to do, our fire departments have done it for years." 95th Ill. Gen. Assem., House Proceedings, May 30, 2007, at 27-34 (statements of Representatives Moffitt, Black, and Holbrook).

9

¶ 18    After reviewing the legislative history, both before and after the enactment of the statute, we conclude that the legislature's intent in allowing a municipality to seek reimbursement for firefighting services provided to nonresidents was to eliminate the taxpayer's burden for such services; the intent was to allocate the cost of the services to nonresidents so that the citizens of the municipality were not forced to bear the cost of services performed on behalf of those not paying taxes to the municipality. Like with the fire protection districts and the volunteer firefighters, a municipality's and township's fire department services are not just limited to fighting fires; thus, the most reasonable interpretation of "firefighting services" in light of the legislative history is all services rendered by the municipality's fire department.

¶ 19                                    III. CONCLUSION

¶ 20    Accordingly, we reverse the trial court's order finding in favor of the LLC because "firefighting services" includes extrication services performed for nonresidents. We remand the matter for further proceedings consistent with this opinion.


¶ 21    Reversed and remanded.

2019 IL App (5th) 180064

NO. 5-18-0064

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

THE CITY OF EFFINGHAM, ILLINOIS,       )       Appeal from the
a Municipal Corporation,               )       Circuit Court of
                                       )       Effingham County.
         Plaintiff-Appellant,          )
                                       )
v.                                     )       No. 17-SC-576
                                       )
DISS TRUCK & REPAIR, LLC,              )       Honorable
                                       )       Amanda S. Ade-Harlow,
         Defendant-Appellee.           )       Judge, presiding.
_____

**Opinion Filed:**        March 28, 2019
_____

**Justices:**        Honorable Thomas M. Welch, J.

                     Honorable Melissa A. Chapman, J., and
                     Honorable Judy L. Cates, J.
                     Concur

_____

**Attorney**        Aaron C. Jones, Taylor Law Offices, P.C., 122 E. Washington Avenue,
**for**             P.O. Box 668, Effingham, IL 62401
**Appellant**

_____

**Pro Se**          Diss Truck & Repair, LLC, 7101 State Route 37, Alma, IL 62807
**Appellee**

_____