# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Larson v. Wexford Health Sources, Inc.*, 2012 IL App (1st) 112065

| | |
|---|---|
| Appellate Court Caption | RAYMOND LARSON, Plaintiff-Appellant, v. WEXFORD HEALTH SOURCES, INC., and MARVIN REED, in his capacity as Assistant Warden at Pontiac Correctional Center, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-11-2065 |
| Filed | June 25, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff inmate's claim under section 8-2001(g) of the Code of Civil Procedure, the "Hospital Records Act," for the attorney fees he incurred in obtaining his medical records was properly denied, since section 8-2001 provides for an award of attorney fees "incurred in connection with any court ordered enforcement" of its provisions, and in plaintiff's case, the records were provided before any court-ordered enforcement occurred. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CH-28764; the Hon. Nancy J. Arnold, Judge, presiding. |
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on Appeal | Uptown People's Law Center, of Chicago (Alan Mills and Nicole Schult, of counsel), for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Rachel Murphy, Assistant Attorney General, of counsel), for appellee Marvin Reed. |
| | Charysh & Schroeder, Ltd., of Chicago (Michael J. Charysh and Wm. Michael LeCrone, of counsel), for appellee Wexford Health Sources, Inc. |
| Panel | JUSTICE KARNEZIS delivered the judgment of the court, with opinion. Presiding Justice Hoffman and Justice Hall concurred in the judgment and opinion. |

## OPINION

¶ 1    Plaintiff Raymond Larson requested copies of his medical records from defendants Wexford Health Sources, Inc. (Wexford), and Marvin Reed (Reed), the assistant warden of Pontiac Correctional Center (Pontiac). Defendants failed to provide the copies within 30 days of his request. Plaintiff filed a complaint against defendants seeking copies of his medical records pursuant to section 8-2001 of the Illinois Code of Civil Procedure (the Code) (735 ILCS 5/8-2001 (West 2010)). After plaintiff filed his complaint but before the court decided his action, Reed's counsel provided plaintiff with the requested copies. The circuit court dismissed plaintiff's action as moot. Plaintiff claimed attorney fees from defendants pursuant to section 8-2001(g) (735 ILCS 5/8-2001(g) (West 2010)). The court denied his claim. On appeal, plaintiff argues the court erred in holding that (1) section 8-2001(g) does not permit an award of attorney fees if the defendant produces a patient's records after suit but before a judicial determination is made on the merits of the complaint; and (2) the doctrine of sovereign immunity prohibited the court from awarding plaintiff attorney fees against Reed. We affirm.

¶ 2                                     Background

¶ 3    Plaintiff is a prisoner at Pontiac. Pontiac is operated by the Illinois Department of Corrections.

¶ 4    On May 3, 2010, plaintiff sent an "Authorization for Release of Offender Medical Health Information" to Reed, the assistant warden at Pontiac in charge of providing medical care to the inmates, and to Dr. Steven Taller, the medical director at Pontiac. Dr. Taller was employed by Wexford, a private corporation that had a contract with the State of Illinois to provide health care services to the prisoners at Pontiac.

¶ 5    In the authorization, plaintiff authorized "Pontiac Correctional Center" to release all his medical records dating between June 1, 2007, and April 28, 2010, to his attorney. Neither defendant provided plaintiff's attorney with the requested medical records or requested additional time in which to provide them.

¶ 6    On July 6, 2010, plaintiff filed a complaint for injunction against Wexford and Reed, in his official capacity as the assistant warden of Pontiac. Pursuant to section 8-2001 of the Code, he sought to enforce his right to obtain a copy of his medical records maintained by one or both defendants.

¶ 7    Section 8-2001, also known as the "Hospital Records Act," obligates every "health care facility" and "health care practitioner" (collectively health care providers) in Illinois to allow patients to obtain access to and/or copies of their medical records in a timely manner. 735 ILCS 5/8-2001 (West 2010); *Ramirez v. Smart Corp.*, 371 Ill. App. 3d 797, 803 (2007) (discussing 735 ILCS 5/8-2001 (West 1998)). Upon receipt of a written request for access to or copies of medical records made by a patient treated in a health care facility or by a health care practitioner, the health care provider has 30 days to comply with the request. 735 ILCS 5/8-2001(e) (West 2010). A health care provider may request one extension of time but must comply with the request no later than 60 days after receiving the request. 735 ILCS 5/8-2001(e) (West 2010). Section 8-2001(g) of the Act provides that "[f]ailure to comply with the time limit requirement of this Section shall subject the denying party to expenses and reasonable attorney fees incurred in connection with any court ordered enforcement of the provisions of this Section." 735 ILCS 5/8-2001(g) (West 2010).

¶ 8    Plaintiff alleged defendants did not provide his medical records within the 30 days as required by section 8-2001(e), did not request additional time within which to provide the records and, as of the date of the complaint, had not produced the records. He requested that the court order defendants to produce copies of his medical records and award him reasonable attorney fees and costs incurred in pursuing the action.

¶ 9    Wexford moved to dismiss the complaint against it. It alleged that, although it did provide health care services to the inmates at Pontiac, it had no proprietary interest in, control over or authorization to copy the medical records of those inmates, including plaintiff's, because the Department of Corrections had sole control over the release, copying or dissemination of all inmates' medical records. The court denied the motion.

¶ 10    On January 14, 2011, the assistant Attorney General representing Reed provided plaintiff's attorney with copies of plaintiff's medical records. Reed moved to dismiss plaintiff's complaint pursuant to sections 2-619(a)(1) and (a)(9) of the Code (735 ILCS 5/2-619(a)(1), (9) (West 2010)). He argued plaintiff's claim for injunctive relief should be dismissed because, plaintiff having received his medical records, the claim was moot. He argued plaintiff's claim against Reed for attorney fees should be dismissed because it was barred by the doctrine of sovereign immunity, the fee claim against Reed being actually a claim against the State of Illinois. Wexford, meanwhile, filed its answer to the complaint. It raised as affirmative defenses the fact that the complaint for injunction was now moot and Wexford had no proprietary interest in, control over or authorization to copy the medical records.

¶ 11    On March 4, 2011, the court entered an order finding, with plaintiff's agreement, that the claim for injunctive relief was moot. It denied Reed's motion to dismiss the claim for attorney fees against him. Plaintiff filed a petition requesting $30,525 in fees. Reed moved to reconsider the court's denial of his motion to dismiss the fee claim, raising again the court's lack of subject matter jurisdiction over Reed under the doctrine of sovereign immunity. Wexford objected to the fee petition, restating its earlier assertion that it had control over or authorization to copy the medical records and "strongly" objecting to the hourly rates claimed in the fee petition.

¶ 12    On June 22, 2011, "for the reasons stated on the record," the court issued a final order granting Reed's motion to reconsider and his motion to dismiss the fee petition against him; sustaining Wexford's objections; and denying the fee petition. There is no report of any court proceeding in the record to show the court's reasoning. Plaintiff asserts the court denied his petition for attorney fees on two grounds: (1) section 8-2001(g) only permits an award of fees when medical records are produced pursuant to a court order and, because plaintiff received his records before the court entered an order requiring either defendant to produce the records, he is not entitled to fees under section 8-2001(g); and (2) the State Lawsuit Immunity Act (745 ILCS 5/1 (West 2010)) barred any award of attorney fees against Reed, regardless of whether a determination on the merits had been made, because the fees would be paid by the State. The parties seem to agree that these were the bases for the court's decision. Plaintiff timely filed his notice of appeal on July 18, 2011.

¶ 13    On appeal, plaintiff argues the court erred in holding that (1) section 8-2001(g) does not permit an award of attorney fees if the defendant produces a patient's records after suit but before a judicial determination is made on the merits of the complaint; and (2) the doctrine of sovereign immunity prohibited the court from awarding plaintiff attorney fees against Reed.

¶ 14    Wexford responds that it had no legal duty to produce plaintiff's requested medical records because section 8-2001 was not applicable to it; the court properly denied plaintiff's petition for attorney fees because there was never a court-ordered enforcement of any provision of section 8-2001 against any defendant; and plaintiff's claim for $30,525 in attorney fees was unreasonable and excessive. Reed responds that plaintiff's claim for attorney fees against him is barred by sovereign immunity because it is, in effect, a claim against the State.

¶ 15                                    Analysis

¶ 16    Plaintiff argues that the court erred in holding that section 8-2001(g) does not permit an award of attorney fees if the defendant produces a patient's records after suit but before a judicial determination is made on the merits of the complaint. Section 8-2001(g) of the Code provides as follows:

    "Failure to comply with the time limit requirement of [section 8-2001] shall subject the denying party to expenses and reasonable attorneys' fees incurred in connection with any court ordered enforcement of the provisions of [section 8-2001]." 735 ILCS 5/8-2001(g) (West 2010).

¶ 17    Putting aside for now any issues regarding whether section 8-2001 applies to Wexford or whether the sovereign immunity doctrine bars an award of attorney fees against Reed, it is uncontested that both defendants failed to comply with the time limit requirement stated in section 8-2001(e) and that the court did not order enforcement of any provisions of section 8-2001 in this case. The question is whether, as plaintiff asserts, attorney fees should be awarded pursuant to section 8-2001(g) when medical records are produced after suit is filed, even when there is no "court ordered enforcement of the provisions of [Section 8-2001]." This is a matter of first impression.

¶ 18    We review *de novo* the court's interpretation of section 8-2001. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 439 (2010). Our main objective in interpreting a statute is to determine and give effect to the intent of the legislature. *Solon*, 236 Ill. 2d at 440. The most reliable indicator of the legislature's intent is the language of the statute, which must be given its plain and ordinary meaning. *Solon*, 236 Ill. 2d at 440. Clear and unambiguous statutory language must be applied as written, without resort to extrinsic aids of statutory construction and without reading into it exceptions, limitations, or conditions that conflict with the expressed intent or that render any part of the statute meaningless or superfluous. *Solon*, 236 Ill. 2d at 440-41. We may consider the consequences that would result from construing the statute one way or the other, always presuming that the legislature did not intend absurd, inconvenient or unjust consequences. *Solon,* 236 Ill. 2d at 441. Only if a statute is ambiguous, if it is capable of being understood by reasonably well-informed persons in two or more different ways, will we consider extrinsic aids of construction in order to discern the legislative intent. *Solon*, 236 Ill. 2d at 440.

¶ 19    The language of section 8-2001(g) is clear: if a health care provider fails to comply with the section 8-2001 time limit requirement for production of medical records, that provider is subject to "reasonable attorneys' fees incurred in connection with any court ordered enforcement of the provisions" of section 8-2001. In other words, if the patient who requested the records and did not timely receive them files suit to force production of the records/compliance with the requirements of the statute, under section 8-2001(g) that patient can be awarded "reasonable attorneys' fees incurred in connection with any court ordered enforcement of the provisions" of section 8-2001.

¶ 20    Looking to the phrase "court ordered enforcement of the provisions of [section 8-2001]," we find it has only one meaning. A "court order" is a "written direction or command delivered by a court or judge." Black's Law Dictionary 368, 1123 (7th ed. 1999). "Enforcement" is "[t]he act or process of compelling compliance with a law, mandate, or command." Black's Law Dictionary 549 (7th ed. 1999). Accordingly, "court ordered enforcement of the provisions of [section 8-2001]" can only mean compelled compliance with the provisions of section 8-2001 resulting from a direction or command by the court.

¶ 21    No such direction or command was issued here. Therefore, plaintiff's receipt of his medical records was not the result of "court ordered enforcement of the provisions of [section 8-2001]." And, necessarily, any attorney fees plaintiff incurred in obtaining those medical records were not "incurred in connection with any court ordered enforcement of the provisions of [section 8-2001]" as required by section 8-2001(g). Because plaintiff did not incur "attorneys' fees in connection with any court ordered enforcement of the provisions of

[section 8-2001],” defendants are not subject to those fees pursuant to section 8-2001(g).

¶ 22　　We agree with plaintiff that interpreting section 8-2001(g) in this way means that health care providers have little incentive to turn over patient records within the time limits specified in the statute. If a patient files an action seeking his medical records, as long as the health care provider produces those records before the court decides the action, there apparently will be no negative ramifications to the health care provider for failing to produce the records within the statutory 30 to 60 days from the patient’s original request for the records. But the wording of section 8-2001(g) is not ambiguous, even when read in the context of the rest of section 8-2001. Because the language is clear and plain, we cannot resort to considering extrinsic aides such as the legislative history to which plaintiff cites, which is arguably not on point anyway given that it does not specifically address section 8-2001. We must interpret section 8-2001(g) as it is plainly written, and that interpretation provides that attorney fees will not be assessed against a noncomplying health care provider unless those fees were incurred in connection with any court-ordered enforcement of the section.

¶ 23　　Plaintiff urges us to consider similar fee-shifting provisions in the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/11(i) (West 2008)) and the Illinois Civil Rights Act of 2003 (Illinois Civil Rights Act) (740 ILCS 23/5(c) (West 2010)). He asserts that courts have held that the right to attorney fees under these provisions attaches when a meritorious complaint is filed, not when the court orders enforcement of the statute(s).

¶ 24　　Section 11(i) of FOIA provides that, “[i]f a person seeking the right to inspect or receive a copy of a public record *prevails* in a proceeding under this Section, the court shall award such person reasonable attorneys’ fees and costs.” (Emphasis added.) 5 ILCS 140/11(i) (West 2008). Section 5(2) of the Illinois Civil Rights Act provides that, “[u]pon motion, a court shall award reasonable attorneys’ fees *** and other litigation expenses, to a plaintiff who is a *prevailing party* in any action brought [under that section of the Illinois Civil Rights Act or to enforce a constitutional right].” (Emphasis added.) 740 ILCS 23/5(c) (West 2010).

¶ 25　　The operative word in both the FOIA and the Illinois Civil Rights Act provisions is “prevail.” In plain language, “to prevail” means someone/a party wins, triumphs, gets what he wants. In a legal context, “prevail” means “[t]o obtain the relief sought in an action; to win a lawsuit.” Black’s Law Dictionary 1206 (7th ed. 1999). A “prevailing party” is “[a] party in whose favor a judgment is rendered” or “successful party.” (Emphasis omitted.) Black’s Law Dictionary 1206, 1145 (7th ed. 1999). A party can prevail in a court action with or without benefit of court-ordered enforcement of a law or statute. Indeed, the Illinois Civil Rights Act’s definition of “prevailing party” reflects this, including in its definition not only any party who obtains some of his requested relief through a judicial judgment in his favor or through a settlement agreement approved by the court, but also any party “whose pursuit of a non-frivolous claim was a catalyst for a unilateral change in position by the opposing party relative to the relief sought.” 740 ILCS 23/5(d)(3) (West 2010).

¶ 26　　Here, plaintiff prevailed on his complaint against defendants. He filed a complaint to force defendants to provide him with copies of his medical records as required by section 8-2001 and, as a result of that action, defendant Reed did provide him with those copies. But

section 8-2001(g) provides only for an award of attorney fees "incurred in connection with any court ordered enforcement of the provisions of [section 8-2001]." No such fees were incurred here. As stated previously, plaintiff did not obtain the copies of his medical records by court-ordered enforcement of section 8-2001. His attorney fees, therefore, were not "incurred in connection with any court ordered enforcement of the provisions of [section 8-2001]" and cannot be awarded under section 8-2001(g).

¶ 27    The legislature had the "substantially prevailing" and "prevailing party" language available but chose not to use it in section 8-2001(g). Instead, it chose to impose the requirement that any attorney fees that might be assessed against a party who failed to comply with the time limit requirement of section 8-2001 had to be incurred in connection with a court-ordered enforcement of the provisions of section 8-2001. That did not happen here. Accordingly, plaintiff may have prevailed in his action to obtain his records but he cannot be awarded attorney fees under section 8-2001(g). We affirm the decision of the circuit court denying plaintiff's petition for attorney fees brought under section 8-2001(g).

¶ 28    Given that the court properly denied plaintiff's petition for attorney fees on the basis that the fees were not incurred in connection with any court-ordered enforcement of section 8-2001, we need not address whether plaintiff's action against Reed was barred by the doctrine of sovereign immunity or whether Wexford had a duty to produce the medical records under section 8-2001.

¶ 29                                                    Conclusion

¶ 30    For the reasons stated above, we affirm the decision of the circuit court denying plaintiff's petition for attorney fees under section 8-2001 of the Code.

¶ 31    Affirmed.