NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2021 IL App (4th) 200397-U

NO. 4-20-0397

IN THE APPELLATE COURT

FILED
July 14, 2021
Carla Bender
4th District Appellate
Court, IL

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| ILLINOIS MANUFACTURERS' ASSOCIATION and ILLINOIS RETAIL MERCHANTS ASSOCIATION, | ) ) | Appeal from the Circuit Court of |
| Plaintiffs-Appellees, | ) | Sangamon County |
| v. | ) | No. 20CH98 |
| ILLINOIS WORKERS' COMPENSATION | ) | |
| COMMISSION and MICHAEL J. BRENNAN, in His | ) | Honorable |
| Official Capacity as Chairman, | ) | John M. Madonia, |
| Defendants-Appellants. | ) | Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Presiding Justice Knecht and Justice DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court reversed the circuit court's judgment and vacated its order awarding plaintiffs attorney fees and costs, concluding that section 10-55(c) of the Illinois Administrative Procedure Act did not apply because the administrative agency's repeal of the rule that was the subject of a temporary restraining order proceeding did not constitute an invalidation of the rule by a court.

¶ 2    Defendants, Illinois Workers' Compensation Commission (Commission) and Michael J. Brennan, Chairman of the Commission, appeal from the Sangamon County circuit court's order awarding plaintiffs, Illinois Manufacturers Association and Illinois Retail Merchants Association, attorney fees and costs under section 10-55(c) of the Illinois Administrative Procedure Act (IAPA) (5 ILCS 100/10-55(c) (West 2018)). We reverse the circuit court's judgment and vacate its order awarding plaintiffs attorney fees and costs.

¶ 3                                    I. BACKGROUND

¶ 4 In March 2020, in response to the COVID-19 pandemic, Governor J.B. Pritzker entered an executive order declaring the state of Illinois "a disaster area." Governor Pritzker later entered an executive order (1) requiring nonessential business activities to temporarily cease and (2) imposing stay-at-home and social distancing measures designed to prevent the spread of the COVID-19 virus.

¶ 5 On April 16, 2020, the Commission grew concerned whether workers' compensation benefits would be available to "first responders" and "frontline workers" who were "most susceptible to exposure" to COVID-19 due to the nature of their employment. To address those concerns, the Commission promulgated emergency amendments to its "Rules of Evidence" for arbitration proceedings in its administrative regulations. See 50 Ill. Admin. Code 9030.70, amended at 44 Ill. Reg. 7809 (emergency rule eff. Apr. 16, 2020) (repealed by 44 Ill. Reg. 8080 (eff. April 27, 2020)). This emergency rule defined "first responders" and "frontline workers" and created a rebuttable presumption that any exposure of a first responder or frontline worker to the virus during a COVID-19-related disaster proclamation as declared by the Governor was connected to "the hazards or exposures of the [person's] COVID-19 first responder or frontline worker employment." *Id.*

¶ 6 On April 22, 2020, plaintiffs filed a motion for a temporary restraining order (TRO) and a verified complaint for a preliminary injunction. Plaintiffs asserted the Commission exceeded its authority under its governing statutes and the IAPA when it promulgated the emergency rule, and it was therefore void as a matter of law. On April 23, 2020, defendants filed a response to the motion, arguing that plaintiffs failed to satisfy the requirements necessary to obtain a TRO. That same day, the circuit court conducted a summary hearing on plaintiffs' motion for a TRO.

¶ 7          On April 24, 2020, the circuit court entered a written order granting plaintiffs' motion and enjoining the Commission from invoking or enforcing the emergency rule against any person or entity. The circuit court further ordered defendants to respond to plaintiffs' verified complaint.

¶ 8          On April 27, 2020, the Commission held an emergency meeting in which it repealed the emergency rule at issue in the plaintiffs' complaint. In a subsequent issue of the Illinois Register, the Commission stated, "Due to pending litigation, the Commission is repealing this emergency rule to avoid unnecessary litigation expenses." 44 Ill. Reg. 8080 (eff. April 27, 2020). On April 30, 2020, defendants filed a motion to dismiss the complaint and dissolve the TRO pursuant to section 2-619 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-619(a)(9) (West 2018)), asserting that the Commission's repeal of the emergency rule rendered plaintiffs' claims moot.

¶ 9          On May 5, 2020, the circuit court entered a written order granting defendants' motion to dismiss, stating the following:

> "[T]he effect of the repeal of the emergency rule[ ] that is the subject of this lawsuit is such that the rule at issue is treated as null and void from its enactment on April 16, 2020, such that the rule cannot and shall not be invoked or enforced by or against any party or entity at any time."

The court specifically agreed with defendants that the issue presented in this case was moot where plaintiffs had "secured what [they] basically sought and a resolution of the issues could not have any practical effect on the existing controversy." The court dismissed the case with prejudice but retained jurisdiction over plaintiffs' claim for attorney fees pursuant to the IAPA.

¶ 10        On May 11, 2020, plaintiffs filed a petition for attorney fees and costs, arguing they were entitled to the same under section 10-55(c) of the IAPA, which allows an award of attorney fees and costs to a party that has an administrative rule invalidated "by a court." 5 ILCS 100/10-55(c) (West 2018). Defendants filed a response, arguing plaintiffs were not entitled to fees under section 10-55(c) of the IAPA because the emergency rule was not invalidated by a court.

¶ 11        In July 2020, the circuit court entered a written order concluding plaintiffs were entitled to attorney fees and costs under section 10-55(c) and ordering defendants to reimburse plaintiffs $97,699 for litigation efforts from April 14, 2020, to May 5, 2020. In its memorandum of opinion accompanying the order, the circuit court reasoned as follows:

> "[I]t does not matter whether the amendments in question were 'invalidated by the court' as Defendants suggest must be specifically found to grant Plaintiffs' fees request, or whether the amendments were 'invalidated because of the Court[,]' a finding this court is expressly making, because the practical effect, and more importantly, the purposes behind the application of [s]ection 10-55(c), are the same regardless of the wording used. The fact remains that Plaintiffs needed to utilize the courts to prevent Defendants from exceeding its statutory authority exactly as contemplated by the provisions of [s]ection 10-55(c) of the IAPA."

¶ 12        In August 2020, defendants filed a motion to stay enforcement of the attorney fees award pending a timely appeal pursuant to Illinois Supreme Court Rule 305(a) (eff. July 1, 2017), which the circuit court allowed.

¶ 13        This appeal followed.

¶ 14                                II. ANALYSIS

¶ 15　　　　　On appeal, defendants argue the circuit court erred as a matter of law when it determined plaintiffs were entitled to attorney fees under section 10-55(c) of the IAPA. Specifically, defendants argue that under the plain language of the statute, plaintiffs did not have the emergency rule involved in this case "invalidated by a court." 5 ILCS 100/10-55(c) (West 2018). In response, plaintiffs argue the circuit court's order granting the TRO constituted "invalidation" of the emergency rule, and therefore they were lawfully entitled to reasonable attorney fees and costs under the statute. *Id.* We agree with defendants.

¶ 16　　　　　This case involves our interpretation of section 10-55(c) of the IAPA, which states as follows:

> "In any case in which a party has any administrative rule invalidated by a court
> for any reason, including but not limited to the agency's exceeding its statutory
> authority or the agency's failure to follow statutory procedures in the adoption of
> the rule, the court shall award the party bringing the action the reasonable
> expenses of the litigation, including reasonable attorney's fees." *Id.*

Generally, the circuit court has broad discretion in awarding attorney fees. *Kirk v. Arnold*, 2020 IL App (1st) 190782, ¶ 12, 157 N.E.3d 1111. However, the parties agree that whether the circuit court properly applied the law when it determined plaintiffs were entitled to attorney fees under section 10-55(c) is a matter of statutory construction that we review *de novo*. See *id.*

¶ 17　　　　　In *Aussieker v. City of Bloomington*, 355 Ill. App. 3d 498, 500, 822 N.E.2d 927, 929 (2005), this court wrote the following:

> "When interpreting a statute, an appellate court must ascertain and give
> effect to the legislature's intent, and the best indication of such intent is the
> language of the statute itself. [Citation.] When the statutory language is clear and

unambiguous, a court must give effect to its plain and ordinary meaning without resort to other tools of statutory construction. [Citation.] Further, undefined words in a statute are given their plain and ordinary meaning. [Citation.]"

¶ 18 Additionally, the doctrine of "[s]overeign immunity does not bar a circuit court action *** to invalidate an administrative rule and recover attorney fees under section 10-55(c) of the [IAPA] [citation]." *Applegate v. State of Illinois Department of Transportation*, 335 Ill. App. 3d 1056, 1061, 783 N.E.2d 96, 101 (2002). However, "since the common law prohibits a prevailing party from recovering attorney fees, statutes which allow for such awards must be strictly construed." *Carson Pirie Scott & Co. v. State of Illinois Department of Employment Security*, 131 Ill. 2d 23, 49, 544 N.E.2d 772, 784 (1989); see also *Illinois Department of Financial and Professional Regulation v. Rodriquez*, 2012 IL 113706, ¶ 13, 983 N.E.2d 985 ("As section 10-55(c) [of the IAPA] provides for attorney fees, it is to be strictly construed.").

¶ 19 B. This Case

¶ 20 We agree with defendants that the circuit court improperly concluded plaintiffs were entitled to attorney fees under section 10-55(c) of the IAPA because, under the plain meaning of the statute, plaintiffs did not have the emergency rule at issue in this case invalidated by a court.

¶ 21 First, and contrary to plaintiffs' assertion, the entry of the circuit court's TRO did not constitute an invalidation of the emergency rule for purposes of section 10-55(c) of the IAPA. "A temporary restraining order is an emergency remedy issued to maintain the status quo while the court is hearing evidence to determine whether a preliminary injunction should issue." *Delgado v. Board of Election Commissioners of City of Chicago*, 224 Ill. 2d 481, 483, 865 N.E.2d 183, 185 (2007). Accordingly, a TRO is designed to be "limited in duration and

interlocutory in nature." See *id.* The parties agree "invalid" means "without legal force or effect." See *Gonzales-Blanco v. Clayton*, 120 Ill. App. 3d 848, 850, 458 N.E.2d 1156, 1158 (1983) (defining "invalid" under predecessor statute to section 10-55(c) of the IAPA).

¶ 22        We conclude the effect of the TRO in this case was not to "invalidate" the emergency rule. Instead, the effect was to maintain the status quo for a *limited* period of time until the circuit court could hear evidence to determine whether a preliminary injunction should issue. The fact that a TRO is inherently temporary supports our conclusion that the TRO alone did not constitute an invalidation of the Commission's emergency rule for purposes of section 10-55(c).

¶ 23        Moreover, any suggestion that the Commission's repeal of the emergency rule constituted invalidation "by the court" because it was motivated by the circuit court's entry of the TRO is contrary to the plain language of the statute. Without question, the Commission's repeal of the emergency rule at issue here constituted an invalidation of the rule. The circuit court, in its order dismissing plaintiffs' complaint, acknowledged that "the effect of the repeal of the emergency rule[ ] that is the subject of this lawsuit is such that the rule at issue is treated as null and void from its enactment." However, the circuit court's determination that the fact (1) plaintiffs "needed to utilize the courts to prevent [d]efendants from exceeding [their] statutory authority" and (2) defendants repealed the emergency rule to "avoid litigation expenses" are enough to trigger section 10-55(c)'s mandatory attorney fees provision is incorrect. The statute does not state that attorney fees shall be awarded if an administrative agency invalidates its own rule in order to avoid litigation expenses in response to a party's successful efforts in seeking temporary equitable relief against the agency. The statute requires that *a court* invalidate an administrative rule. That did not occur in this case.

¶ 24        In support of their argument, defendants rely on this court's decision in *Adams Farm v. Doyle*, 312 Ill. App. 3d 481, 727 N.E.2d 638 (2000). Defendants acknowledge, and we agree, that the facts and procedural history presented in *Adams* are distinguishable from this case in several respects. Nonetheless, we find this court's reasoning in *Adams* instructive.

¶ 25        In *Adams*, the plaintiffs, who were grain producers, successfully argued before an Illinois Department of Agriculture hearing officer that certain rules regarding notification requirements in response to a grain dealer's failure to pay should not apply to them because of outdated and inconsistent language within the agency's governing statute. See *id.* at 489. The hearing officer decided not to apply the rules due to "possible confusion under the circumstances." *Id.* Upon the circuit court's review, the circuit court determined plaintiffs were entitled to attorney fees under the predecessor statute to section 10-55(c) of the IAPA (Ill. Rev. Stat. 1989, ch. 127, ¶ 1014.1(b), recodified at 5 ILCS 100/10-55(c) (West 2018)) because they succeeded in convincing the hearing officer the rules at issue should not apply to them. *Adams*, 312 Ill. App. 3d at 489. This court determined the circuit court's decision to award attorney fees was incorrect, concluding that "the action was taken by the hearing officer, not by the circuit court." *Id.* Plaintiffs argue in response that this court's holding in *Adams* supports the award of attorney fees based on this court's later comment that section 10-55(c)'s purpose is "to discourage the application of rules that [an agency] knows are likely to be invalidated if the matter ever reaches the circuit court." *Id.* at 490.

¶ 26        We agree with defendants' assertion that *Adams* supports reversal of the attorney fees award. This court clearly stated that the *Adams* plaintiffs were not entitled to attorney fees where not only was there no rule that was invalidated—the hearing officer merely chose not to apply the agency's rule—but also it was not the *circuit court* who took that action. See *id.* at 489.

Likewise, in this case, it was the actions of the Commission, not a court, that resulted in the invalidation of the emergency rule. The legislature clearly contemplated that invalidation of an administrative rule could occur by voluntary repeal or amendment by the administrative agency and chose to specifically require that attorney fees only be awarded when a party has an administrative rule invalidated *by the court*.

¶ 27        Plaintiffs make much of the statute's language requiring the court to award fees if it invalidates the rule "*for any reason*." While we agree this language is intended to be broad and encompass successful efforts at invalidating an administrative rule under a plethora of legal theories, it does not negate the fact that the invalidation must be *by the court*.

¶ 28        Plaintiffs further rely on the circuit court's reasoning that there is no practical difference between invalidation "by the court" and "because of the court." We emphatically disagree. A significant difference exists between invalidation "by the court" and "because of the court," and—especially given our mandate to strictly construe statutes allowing for attorney fees—we will not read plaintiffs' suggested broader meaning into the language of the statute.

¶ 29        Although we have already determined the language of the statute is clear and unambiguous, a brief survey of other attorney fees provisions under Illinois law further illuminates the plain meaning of section 10-55(c) of the IAPA. In *Larson v. Wexford Health Sources, Inc.*, 2012 IL App (1st) 112065, ¶¶ 24-25, 974 N.E.2d 331, the First District aptly compared several of those provisions as follows:

> "Section 11(i) of FOIA provides that, '[i]f a person seeking the right to inspect or receive a copy of a public record *prevails* in a proceeding under this Section, the court shall award such person reasonable attorneys' fees and costs.' (Emphasis added.) 5 ILCS 140/11(i) (West 2008). Section 5([c]) of the Illinois

Civil Rights Act provides that, '[u]pon motion, a court shall award reasonable attorneys' fees *** and other litigation expenses, to a plaintiff who is a *prevailing party* in any action brought [under that section of the Illinois Civil Rights Act or to enforce a constitutional right].' (Emphasis added.) 740 ILCS 23/5(c) (West 2010).

The operative word in both the FOIA and the Illinois Civil Rights Act provisions is 'prevail.' In plain language, 'to prevail' means someone/a party wins, triumphs, gets what he wants. In a legal context, "prevail" means '[t]o obtain the relief sought in an action; to win a lawsuit.' Black's Law Dictionary 1206 (7th ed. 1999). A 'prevailing party' is '[a] party in whose favor a judgment is rendered' or 'successful party.' (Emphasis omitted.) Black's Law Dictionary 1206, 1145 (7th ed. 1999). A party can prevail in a court action with or without [the] benefit of court-ordered enforcement of a law or statute. Indeed, the Illinois Civil Rights Act's definition of 'prevailing party' reflects this, including in its definition not only any party who obtains some of his requested relief through a judicial judgment in his favor or through a settlement agreement approved by the court, but also any party 'whose pursuit of a non-frivolous claim was a catalyst for a unilateral change in position by the opposing party relative to the relief sought.' 740 ILCS 23/5(d)(3) (West 2010)."

¶ 30    Just as the *Larson* court determined when interpreting section 8-2001(g) of the Civil Code (735 ILCS 5/8-2001(g) (West 2010))—that "[t]he legislature had the 'substantially prevailing' and 'prevailing party' language available but chose not to use it"—we also conclude that the lack of inclusion of this language in section 10-55(c) of the IAPA in this case is

indicative of its plain meaning. See *Larson*, 2012 IL App (1st) 112065, ¶ 27. After all, " '[If] the legislature uses certain words in one instance and different words in another, it intends different results.' " *Illinois Bell Telephone Co. v. Illinois Commerce Commission*, 362 Ill. App. 3d 652, 661, 840 N.E.2d 704, 712 (2005) (quoting *Divane v. Smith*, 332 Ill. App. 3d 548, 553, 774 N.E.2d 361, 365 (2002)). Although plaintiffs may have "prevailed" in the circuit court under the definition set forth in the Illinois Civil Rights Act, that is not the standard or language under which the circuit court was bound in this case under section 10-55(c) of the IAPA. We give effect to the language the legislature chose.

¶ 31        Finally, we agree with defendants that the circuit court's reliance on secondary tools of statutory construction in determining plaintiffs were entitled to attorney fees was not necessary, given the plain language of the statute. Plaintiffs contend the circuit court's legislative purpose analysis was appropriate because (1) the court was permitted to consider whether its interpretation "made sense under the facts of [the particular] case," (quoting *County of DuPage v. Illinois Labor Relations Board*, 359 Ill App. 3d 577, 580-81, 834 N.E.2d 976, 979 (2005)), (2) the court was required to consider the purpose of the statute and the problems it was intended to remedy, and (3) the interpretation suggested by defendants would yield an "absurd and unjust result." Although we agree the court was permitted to consider whether its interpretation "made sense" under the facts of the case, a court should not—as occurred here—delve into a legislative purpose analysis where the language of the statute is unambiguous or prioritize its own sense of the statute's purpose above the plain language. Additionally, we find nothing absurd about a result in which a litigant must pay his own attorney fees—the standard practice under the American rule, as stated *supra* ¶ 18—when he is not otherwise entitled to them under the strict construction of a relevant statute.

¶ 32       We conclude the circuit court's award of attorney fees in this case was not authorized by section 10-55(c) of the IAPA because plaintiffs did not have the Commission's emergency rule invalidated by a court. Accordingly, we agree with defendants and reverse the circuit court's judgment.

¶ 33                                III. CONCLUSION

¶ 34       For the reasons stated, we reverse the Sangamon County circuit court's judgment and vacate its order awarding plaintiffs' attorney fees and costs.

¶ 35       Reversed.